## LOCAL UNION NO. 721, UNITED PACKINGHOUSE, FOOD & ALLIED WORKERS, AFL–CIO, v. NEEDHAM PACKING CO., DOING BUSINESS AS SIOUX CITY DRESSED BEEF.

No. 102. Argued February 20, 1964.—Decided March 9, 1964.

*Richard F. Watt* argued the cause for petitioner. With him on the briefs were *Eugene Cotton* and *Harry H. Smith.*

*Alfred L. Scanlan* argued the cause for respondent. With him on the brief were *James A. Gilker* and *Jesse E. Marshall.*

Mr. Justice Harlan delivered the opinion of the Court.

This case, which was brought here from the Supreme Court of Iowa, 374 U. S. 826, presents a problem concerning the relationship between an arbitration clause and a no-strike clause in a collective bargaining agreement.

Although this case comes to us on the pleadings and some disputed questions of fact are still to be resolved, we accept as true the following facts for the purposes of our decision. The petitioner, Local Union No. 721, United Packinghouse, Food and Allied Workers, AFL–CIO, and the respondent, Needham Packing Co., had an agreement which included provisions of both kinds, set out hereafter. On May 11, 1961, Needham discharged Anton Stamoulis, an employee represented by the union. In response, on the same day about 190 other employees left work. During the next few days Needham advised the employees to return to work, stating that if they did not their employment would be regarded as terminated and that the discharge of Stamoulis would be treated under the grievance procedures of the collective bargaining agreement. The employees did not return to work.

On July 5, 1961, the union presented to Needham written grievances on behalf of Stamoulis and the other employees, asserting that they had been "improperly discharged" and requesting their reinstatement with full seniority rights and pay for lost time. By letter dated July 11, 1961, Needham refused to process the grievances. The letter stated that the union and its members had by their conduct "repudiated and terminated the labor agreement" with the company. In addition, Needham stated that it would not have further dealings with the union and did not recognize the union as majority representative of Needham employees.

This suit by the union under § 301 (a) of the Labor Management Relations Act, 29 U. S. C. § 185 (a), to

compel arbitration of the two grievances followed. Needham alleged as a defense that the union and its members had struck on May 11, 1961, and that this breach of the no-strike clause of the collective bargaining agreement had been and was treated by Needham as having terminated its obligations under the agreement. In addition, Needham filed a counterclaim, alleging that it had been damaged in the amount of $150,000 by the union's breach of the no-strike clause. The union denied such breach. At the close of the pleadings, in accordance with Iowa procedure, Needham moved for a ruling on points of law and a final order denying the union's petition to compel arbitration.[1] Deciding solely on the basis of matters raised in the pleadings as to which there was no dispute, the trial court ruled in Needham's favor and issued an order against the union. The union obtained an appeal. The Supreme Court of Iowa affirmed the holding below that "the Union had waived its right to arbitrate the grievances filed by its walkout." 254 Iowa 882, 887, 119 N. W. 2d 141, 143.[2]

In the present posture of this case, we must answer the question whether acts of the union relieved Needham of

---

[1] Rule 105 of the Iowa Rules of Civil Procedure provides:

"The court may in its discretion, and must on application of either party, made after issues joined and before trial, separately hear and determine any point of law raised in any pleading which goes to the whole or any material part of the case. It shall enter an appropriate final order before trial of the remaining issues, adjudicating the point so determined, which shall not be questioned on the trial of any part of the case of which it does not dispose. If such ruling does not dispose of the whole case, it shall be deemed interlocutory for purposes of appeal."

[2] Although Rule 105 provides that a final order entered under it shall be "deemed interlocutory for purposes of appeal," the order which is entered is a "final order . . . adjudicating the point so determined, which shall not be questioned on the trial of any part of the case of which it does not dispose." See *supra,* note 1. Accordingly, our jurisdiction was properly invoked.

its contractual obligation to arbitrate almost entirely on the basis of the agreement itself. We think it plain that, seen from that perspective, the judgment below must be reversed.

The two controlling provisions of the collective bargaining agreement are written in comprehensive terms. The no-strike clause provides:

> "It is agreed that during the period of this agreement the employees shall not engage in and the Union shall not call or sanction any slow down, work stoppage or strike . . . ."

The grievance provisions include typical procedures for the resolution of a dispute preliminary to arbitration. They then provide:

> "In the event a dispute shall arise between the Company and the Union with reference to the proper interpretation or application of the provisions of this contract and such dispute cannot be settled by mutual agreement of the parties, such dispute shall be referred to a board of arbitration upon the request of the Union."

It is evident from the above as well as other provisions of the agreement [3] that the grievance procedures were intended largely, if not wholly, for the benefit of the union.

A state court exercising its concurrent jurisdiction over suits under § 301 (a) applies federal substantive law. *Charles Dowd Box Co., Inc.,* v. *Courtney,* 368 U. S. 502. The law which controls the disposition of this case is stated in *Drake Bakeries Inc.* v. *Local 50, American Bakery & Confectionery Workers International, AFL–*

---

[3] For example, the agreement provides that grievances must be presented within 14 days "of the occurrence giving rise to such grievance" or within 14 days "of the time the Union has knowledge, or should have had knowledge of such grievance . . . ."

*CIO,* 370 U. S. 254. In that case, the employer had filed an action for damages under § 301 (a), alleging that the union had "instigated and encouraged its members to strike or not to report for work," in violation of a no-strike clause. *Id.,* at 256. The collective bargaining agreement contained a broad arbitration clause covering "all complaints, disputes or grievances arising between . . . [the parties] involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly." *Id.,* at 257.

The employer argued that the promise not to strike was so basic to the collective bargain and breach of the no-strike clause so completely inconsistent with the provision for arbitration that the employer's duty to arbitrate was excused by the union's breach. This argument, which is essentially that of Needham here, was rejected on grounds fully applicable to this case. Although the Court relied in part on the employer's apparent intention not to terminate the contract altogether, more central to its conclusion was the view that there was no "inflexible rule rigidly linking no-strike and arbitration clauses of every collective bargaining contract in every situation." *Id.,* at 261. (Footnote omitted.) We said:

". . . [U]nder this contract, by agreeing to arbitrate all claims without excluding the case where the union struck over an arbitrable matter, the parties have negatived any intention to condition the duty to arbitrate upon the absence of strikes. They have thus cut the ground from under the argument that an alleged strike, automatically and regardless of the circumstances, is such a breach or repudiation of the arbitration clause by the union that the company is excused from arbitrating, upon theories of waiver, estoppel, or otherwise. Arbitration provisions, which themselves have not been repudiated, are meant to

survive breaches of contract, in many contexts, even total breach; and in determining whether one party has so repudiated his promise to arbitrate that the other party is excused the circumstances of the claimed repudiation are critically important. In this case the union denies having repudiated in any respect its promise to arbitrate, denies that there was a strike, denies that the employees were bound to work on January 2 and asserts that it was the company itself which ignored the adjustment and arbitration provisions by scheduling holiday work." *Id.,* at 262–263. (Footnotes omitted.)

Continuance of the duty to arbitrate is, if anything, clearer here than it was in *Drake Bakeries,* where one of the issues was whether an alleged strike was within the intended scope of the arbitration clause. There is no question in this case that the union's claim of wrongful discharge is one which Needham agreed to arbitrate.[4] Nothing in the agreement indicates an intention to except from Needham's agreement to arbitrate disputes concerning the "interpretation or application" of the agreement any dispute which involves or follows an alleged breach of the no-strike clause. That the no-strike clause does not itself carry such an implication is the holding of *Drake Bakeries.*

The fact that the collective bargaining agreement does not require Needham to submit its claim to arbitration, as the employer was required to do in *Drake Bakeries,* and indeed appears to confine the grievance procedures to grievances of the union, does not indicate a different result. Needham's claim is the subject of a counterclaim in the Iowa courts; nothing we have said here precludes

---

[4] In effect, the union's grievance involved the "interpretation or application" of § 8 (a) of the collective bargaining agreement, which provided that Needham could discharge employees "for just cause."

it from prosecuting that claim and recovering damages.[5] That Needham asserts by way of defense to the union's action to compel arbitration the same alleged breach of the no-strike clause which is the subject of the counterclaim does not convert the union's grievance into Needham's different one.[6]

Nor do we believe that this case can be distinguished from *Drake Bakeries* on the ground that that case involved only a "one-day strike," *id.,* at 265. Whether a fundamental and long-lasting change in the relationship of the parties prior to the demand for arbitration would be a circumstance which, alone or among others, would release an employer from his promise to arbitrate we need not decide, since the undeveloped record before us reveals no such circumstance. Compare *Drake Bakeries, supra,* at 265. The passage of time resulting from Needham's refusal to arbitrate cannot, of course, be a basis for releasing it from its duty to arbitrate.

Needham's allegations by way of defense and counterclaim that the union breached the no-strike clause, supported by such facts as were undisputed on the pleadings, did not release Needham from its duty to arbitrate the union's claim that employees had been wrongfully discharged. On that basis, we reverse and remand to the Iowa Supreme Court for further proceedings.

*It is so ordered.*

---

[5] Here, as in *Atkinson* v. *Sinclair Refining Co.,* 370 U. S. 238, we find it unnecessary to decide what effect, if any, factual or legal determinations of an arbitrator would have on a related action in the courts. See *id.,* at 245, note 5.

[6] *Atkinson* v. *Sinclair Refining Co.,* 370 U. S. 238, in which the provision for arbitration was similarly limited to employee grievances, is of no relevance here, since the question in that case was whether the *employer's* action for breach of the no-strike clause should be submitted to arbitration.