This memorandum opinion will be adopted by the court as its findings of fact and conclusions of law, and the clerk will prepare and enter the proper judgment.

LOCAL JOINT EXECUTIVE BOARD, HOTEL & RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION, et al., Plaintiffs,

v.

NATIONWIDE DOWNTOWNER MOTOR INNS, INC., d/b/a Downtowner & Downtowner Motor Inn, Defendant.

No. 14004–2.

United States District Court
W. D. Missouri, W. D.

May 20, 1964.

414

John J. Manning and Robert S. Fousek, Kansas City, Mo., for plaintiff.

Spencer, Fane, Britt & Browne, Kansas City, Mo., for defendant.

GIBSON, Chief Judge.

This is a suit for specific performance of a labor contract purportedly entered into between plaintiff, hereinafter referred to as either plaintiff or Union, and defendant, hereinafter referred to as defendant or Downtowner, and plaintiff is here seeking the payment of health and welfare payments alleged to be due under that contract. It is admitted by both parties that on or about May 1, 1962, Mr. John Nichols, Jr., the general manager of the Downtowner Motor Inn located at 13th and Central Streets, Kansas City, Missouri, signed a document, hereinafter called the green contract, which was a labor contract form commonly used between the Union and the members of the Hotel Association of Greater Kansas City. The document was not signed by any union official, however, the master agreement between the Union and the Hotel Association was signed by the Union.

The defendant contends that the failure of the Union to sign the green contract invalidated the contract because there was no mutuality of obligation between the Union and the defendant. Further, the defendant contends that the green contract was not binding on it because Nichols had no authority, either express or implied, to sign such a document, neither did he have any apparent authority or inherent agency power to sign such an agreement, and even assuming that he had such apparent authority or inherent agency power, the signing of a labor collective bargaining agreement is an extraordinary act and would be beyond the scope of the apparent authority. The defendant also contends that the Union did not have a majority at the time the green contract was signed, and that even if a valid agreement was entered into it was breached by the strike which took place on October 18, 1962 and the contract was rescinded on October 19, 1962, by letter from Mr. Don Baker, vice president of defendant, to the Union.

■■ Although the evidence amply demonstrates that Mr. Baker, vice president of defendant, informed Nichols after Nichols had signed the green contract that Nichols did not have the authority to sign such an agreement, there is also evidence that prior to the time that Nichols signed the contract that he had been informed that he could pay union scale wages, and that he could join the Hotel Association on behalf of the Downtowner. From this evidence it could be inferred that Nichols had implied authority to enter into a collective bargaining agreement, however, the Court is of the opinion that there existed both apparent authority and inherent agency power to enter into the

contract, and that the question of implied authority need not be reached. Defendant employed Nichols as its general manager at the Kansas City Downtowner continuously from March 1, 1962, until January 1963. The employment of Nichols as general manager from March 1, 1962, until the time the green contract was signed by him in May 1962, was a manifestation by Downtowner to third persons of the authority of Nichols to bind Downtowner, and the Court is of the opinion that a collective bargaining agreement would not be such an unusual or extraordinary contract that it would be outside the scope of the apparent authority of Nichols. It is the further opinion of the Court that Nichols, through his employment as general manager, had inherent agency power to bind his principal to the contract, even if he was specifically informed that he had no authority to enter a contract of the type here involved. Nichols' duties as a general manager involved placing the Downtowner in operation as soon as the physical plant was completed; thus, necessitating the hiring and securing of some experienced personnel to operate the business. In such a situation a labor contract could be a favorable factor in securing personnel and acquiring experienced help. Whether the signing of a contract for representation was in the best interest of the Downtowner was a matter of judgment that would have to be considered and resolved before opening the Downtowner to the public and thus certainly was within the ambit of a general manager's inherent authority as well as apparent authority to manage, conduct and operate the business.

It is also contended by defendant that the Union did not have a majority at the time the contract was signed by Nichols. In support of its position the defendant relies on International Ladies Garment Workers' Union v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961), a case which held that where only a minority had authorized the Union to act as their bargaining agent, it constituted an unfair labor practice for

the union and the company to enter into a contract which affected the rights of all of the workers, and also held that the contract was invalid to all employees including the minority who had given their authorization. That case is not the present case. There is no showing that the Union did not represent a majority, a fact which was shown in the Garment Workers case, and it would seem that under the facts involved in this case it would be incumbent on the defendant to show that the Union did not have a majority, inasmuch as Nichols by signing and being accorded the opportunity of checking the cards apparently recognized the majority status of the Union.

The main issue in the case appears to be whether or not the contract was void for lack of mutuality of obligation. It is the contention of the defendant that since the contract was not signed by the Union that it is not valid. The position of the Union is that the signing of the master agreement by the Union is sufficient, and even if it is not, then there has been an acceptance of the contract which would render the signing of the contract meaningless.

Prior to May 1, 1962, Nichols was informed by Mr. Baker that he was authorized to join the Hotel Association and the evidence indicates that Nichols did join the Association on behalf of the Downtowner prior to the time he signed the green contract on behalf of the defendant. In view of this fact and in view of the fact that at the time of the strike the Union attempted to persuade the workers to go back to work and not to strike, the Court is of the opinion that this case falls into that group of cases in which a signature by the parties is not a necessity. Since the Downtowner was a member of the Hotel Association which had a contract with the Union, and it is undisputed that the Union signed the master agreement, the Court finds that the signing by Nichols on behalf of the defendant manifested an assent to the contract and that the Union had already manifested its assent by its signing of the master agree-

ment and by its securing of Nichols' signature on the contract. It is well established that assent to a contract may be shown in other forms rather than by signature. Hillcrest Inv. Co. v. United States, 55 F.Supp. 147 (D.C.Mo.1944), affd. 147 F.2d 194; Thompson v. Baltimore & Ohio R.R., D.C., 59 F.Supp. 21 (1945). Further the parties may accept the performance of the other party in lieu of signature and such performance is a manifestation of assent. Brandt v. Beebe, 332 S.W.2d 463 (Mo.App.1960); Hahn v. Forest Hills Const. Co., 334 S.W.2d 383 (Mo.App.1960). Under the facts of this case where there has been a furnishing of personnel by the union, an attempt by the union to avert a strike, the employment of union personnel by the employer, and the payment of union scale wages with the exception of overtime, the Court finds that the signature of the Union on the duplicate was unnecessary to the manifestation of an assent by the Union and that the contract was valid and binding on the Union and on the defendant.

The final defense raised by the defendant is that the contract was rescinded on October 19, 1962, when Mr. Baker caused to be sent to plaintiff a letter stating that due to the strike the contract, if such were in existence, was breached and rescinded, and that in light of the fact that a new contract between the Hotel Association and the Union was signed on October 17, 1962, that the signing of the contract, hereinafter called the white contract, terminated and superseded the green contract. The Court is of the opinion that the signing of the white contract did not operate to terminate the green contract. By its terms the green contract was effective until June 16, 1963, and contains no automatic renewal provision. Section 27 of the green contract sets out the duration of the contract in this language:

"This agreement shall continue in force until June 16, 1963, except as to the scales of wages and hours. The scales of wages and hours herein provided shall continue in force until June 16, 1962. If either of the parties hereto desires a change in the wage scales following June 16, 1962, or any succeeding year of the contract, such party shall give the other party written notice thereof at least thirty (30) days prior to June 16, 1962, or any succeeding year, and the parties shall thereupon negotiate as to such changes."

Therefore, unless the signing of the white contract by the Hotel Association and the Union effected an extension of the green contract, defendant would cease to be bound under the contract on June 16, 1963. The white contract was not signed by the defendant and in fact in the enumeration of the parties thereto there is no mention of the defendant. Further, defendant had by letter prior to the signing of the white contract by the Hotel Association and the Union, informed the Hotel Association in writing that it did not desire the Hotel Association to negotiate for it in the field of labor agreements. Under these circumstances it is clear that the white contract did not operate to extend the terms of the green contract, and further under the green contract it is clear that any duty of defendant to make insurance payments for its employees would also terminate on June 16, 1963. Section 42 of the green contract provides that payments of insurance will be made during the period the contract is in effect and as stated above, it seems clear that June 16, 1963, would be the date on which the agreement expired.

The defendant contends that strike by the Union constituted a material breach of the green contract and that when the strike occurred, the defendant was given the option of either waiving the breach and continuing under the contract or of rescinding the contract. It seems clear that a strike in violation of a no-strike clause is a material breach for which the employer may choose to rescind, and that the rescission would operate to terminate the contract with the exception of the arbitration agreement. United Electrical R

& M Workers v. NLRB, 96 U.S.App.D.C. 46, 223 F.2d 338, 341 (D.C.Cir.1955); Boeing Airplane Co. v. Aeronautical Industrial District Lodge No. 751, International Association of Machinists, 9 Cir., 188 F.2d 356, 357 (9th Cir. 1951). In the present situation, however, defendant itself breached the contract prior to the breach by the Union. In fact the only provisions of the contract with which the defendant complied was the provision for wages, and that was only paid on a straight time basis. Therefore, defendant was guilty of the first substantial breach of the contract and cannot rescind upon the subsequent breach by the Union. Landau v. St. Louis Public Service Co., 364 Mo. 1134, 273 S.W.2d 255, 48 A.L.R.2d 1200 (Mo. 1954). Further it was the unilateral action of the defendant in announcing to the maids and hall boys that they would be required to work 8 hours per day exclusive of any time taken for lunch or for periodic breaks that precipitated the strike, and as stated in 17A C.J.S. Contracts, § 423, " * * * one party will not be permitted by his breach to create a condition which will tend to bring the other party into default and then assert that such party's rights are forfeited by a default so caused." Therefore, the letter sent by Mr. Baker on October 19, 1962, did not operate to terminate the contract, and it remained in effect until its termination date on June 16, 1963.

For the foregoing reasons the Court finds that a valid contract was entered into between plaintiff and defendant on or about May 1, 1962, and that such agreement continued in effect until June 16, 1963. Defendant is liable under the terms of the agreement for any dues and initiation fees which should have been checked off, and is also liable for any insurance payments under Section 42 of the green contract which should have been made in the period from May 1, 1962 to June 16, 1963. The parties are to agree on the amount of money owing from defendant to plaintiff and are to submit a form of judgment entry to the Court within 10 days. Due to the finding that the contract was terminated on June 16, 1963, the plaintiff's prayer for injunction will be denied.

It is so ordered.