BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, LODGE 844, an unincorporated association, Appellant,

v.

KENNECOTT COPPER CORPORATION (UTAH COPPER DIVISION), a corporation, Appellee.

No. 7680.

United States Court of Appeals Tenth Circuit.

Nov. 20, 1964.

Robert M. Yeates, Salt Lake City, Utah (Mulliner, Prince & Mangum and Gerald R. Miller, Salt Lake City, Utah, on the brief), for appellant.

Keith E. Taylor, Salt Lake City, Utah (Calvin A. Behle and Parsons, Behle, Evans & Latimer, Salt Lake City, Utah, on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This is an action arising under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, in which the Brotherhood seeks declaratory and equitable relief for alleged infractions of its collective bargaining agreement with Kennecott. The action was dismissed by the trial court and this appeal followed. We deem the determinative question to be whether such dismissal was proper in view of the grievance procedures contained in the collective bargaining agreement. The appellant Brotherhood has admittedly not pursued such provisions as a condition precedent to its claimed cause of action.

The Brotherhood represents engineers, firemen, brakemen and other such classified employees engaged in the function of haulage at the Kennecott open pit copper mine at Bingham Canyon, Utah. The

mine is one of many levels and its operation requires the movement of a great tonnage of material. In November, 1963, Kennecott initiated a major change in its haulage system by replacing some of its electric trains with large pieces of rubber-tire, diesel-powered equipment. Railroad tracks were removed at certain levels in the mine and the railroad train operations by members of the Brotherhood were supplanted by trucks. Rather than negotiating with the Brotherhood in reference to the new job classifications created by the different method of haulage, Kennecott entered into an agreement with the International Union of Mine, Mill and Smelter Workers, Local No. 485, and granted all the new haulage jobs to members of that union. The Brotherhood contends that this action constitutes a breach of Rule 18(C) (2) [1] of the collective bargaining agreement between the parties, which relates to seniority rights of employees, and of Rule 5(A),[2] which concerns rates of pay in new job classifications for the Brotherhood's members. In its complaint the Brotherhood characterizes its claim of breach of contract and the counter-assertion of Kennecott in such regard in these words:

"2. An actual and real controversy or dispute exists between plaintiff and defendant as to the application and effect of said collective bargaining agreement in view of the changes contemplated and presently being made by defendant concerning the equipment used in the mine haulage service and the rights and duties of plaintiff and defendant under said collective bargaining agreement and said certification and all of the circumstances of this case insofar as the representation of employees engaged in the mine haulage service is concerned."

Kennecott concedes the existence of the disputes [3] and points to that fact as a proper basis for the dismissal of the complaint because of the compulsion of Rules 25 and 27 of the collective bargaining agreement. Rule 25 states:

"(A) Should any difference of opinion, controversy or dispute arise between the parties hereto as to the interpretation or application of any of the provisions of this agreement, such difference of opinion, controversy or dispute shall constitute a grievance. The procedure outlined in this Rule shall be the sole and exclusive method of handling grievances."

Rule 27 provides for arbitration of complaints and claims not decided under Rule 25.

██ We find Kennecott's position to be unassailable as a premise for the correctness of the trial court's judgment. The nature of the admitted dispute between the parties fits comfortably with the contractual language of Rule 25 as "a difference of opinion * * * as to the interpretation or application * * *

---

1. "Engineers, Firemen, Motormen, Brakemen (Motorman Helper), Hostlers and Hostler Helpers shall hold seniority rights in the Mine Haulage Service, regardless of the kind of motive power used, and shall have the choice of position to which their seniority rights shall entitle them."

2. "If, in the future, the Company places into operation materially different types of machinery, apparatus, equipment, or new processes which necessitate the installation of new job classifications, or the making of the major changes in the present job classifications, the Company and the Organization will discuss and endeavor to agree on the wage rates for such job classifications on a basis that such wage rates will be in proper relationship to the wage rates of other job classifications in the plant. The agreed upon rate shall be placed in effect as of the day such new or changed types of machinery, apparatus, equipment or new processes are placed into operation."

3. Without arguing the merits of the controversy, Kennecott indicates reliance upon provisions in the bargaining contract relating to general managerial prerogatives and special procedures relating to reduction in employment occasioned by technological changes, new operational procedures and other causes.

of the provisions of this agreement * * *." and consequently triggers the contractual obligation to process the controversy through designated grievance procedures and, if necessary, to arbitration. Strong federal policy, oft-stated as in John Wiley & Sons v. Livingston, 376 U.S. 543, 549–550, 84 S.Ct. 909, 11 L.Ed.2d 898, favors arbitration as a means of settling industrial disputes. The congressional policy founding section 301 actions is succinctly stated by Mr. Justice White in Drake Bakeries, Inc. v. Local 50, American Bakery etc., Workers, 370 U.S. 254, 263, 82 S.Ct. 1346, 1352, 8 L.Ed.2d 474, where he states:

"In passing § 301, Congress was interested in the enforcement of collective bargaining contracts since it would 'promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace' (S.Rep. No. 105, 80th Cong., 1st Sess. 17). It was particularly interested in placing 'sanctions behind agreements to arbitrate grievance disputes' (Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456, [77 S.Ct. 912, 917, 1 L.Ed.2d 972]). The preferred method for settling disputes was declared by Congress to be '[f]inal adjustment by a method agreed upon by the parties' (§ 203(d) of the Act, 29 U.S.C. § 173(d)). 'That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play' (United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566, [80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403])."

■ The Brotherhood's contention that the dispute in the case at bar is not one intended by the parties to be subject to grievance procedures is without merit for it is only by the most forceful evidence of purpose that such an exclusionary claim can prevail. International Union, UAW v. Cardwell Mfg. Co., 10 Cir., 304 F.2d 801. All doubts should be resolved in favor of arbitration and "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409. And it makes no difference that the union is attempting to avoid rather than compel arbitration. Bonnot v. Congress of Independent Unions, Local 14, 8 Cir., 331 F.2d 355, 359.

■ The Brotherhood also claims that the dispute need not be submitted to the grievance procedures because Kennecott's action constituted a repudiation of the collective bargaining agreement. In support of this argument the Brotherhood relies on Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309, which held that no-strike provisions of a labor agreement did not prohibit strikes in the face of flagrant unfair labor practices by the employer that threatened the very existence of the union. The circumstances of that case are so different as to render it inapposite, and it therefore cannot serve as authority to relieve the Brotherhood from its duty to follow the contractual grievance procedures. Drake Bakeries, supra, 370 U.S. at 265–266, 82 S.Ct. 1346. In Local 721, United Packinghouse Workers v. Needham Packing Co., 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed. 2d 680, the Supreme Court held that a two-month strike by a union in violation of a no-strike clause in the collective bargaining agreement was not sufficient repudiation to relieve the employer of its contractual duty to arbitrate grievances. In view of these authorities we cannot agree with the Brotherhood that the action by Kennecott constituted a waiver of its right to arbitration.

The other contentions of the Brotherhood are similarly without merit. The judgment is affirmed.