MIGUEL A. MARTÍNEZ ET AL., Plaintiffs and Appellants, *v.* COMMONWEALTH OIL REFINING COMPANY, INC., Defendant and Appellee.

No. R-64-163.    Decided June 30, 1965.

674

*Antonio José Amadeo, José A. Suro*, and *Miguel J. Ríos Lugo* for appellants. *Fiddler, González & Rodríguez, Víctor M. Pons, Jr., Salvador E. Casellas*, and *Juan R. Torruella del Valle* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On January 24, 1962, three hundred and eighty-two (382) workers of defendant Commonwealth Oil Refining Company sued the latter in the Superior Court, San Juan Part, claiming double pay for work during the lunch hour. They alleged having worked for defendant since September 1955 and that during that period the latter has requested them to work shifts of eight (8) hours each, and as a result they did not enjoy one (1) hour free for mealtime as provided by Act No. 379 of 1948; and that they worked said hour without

stipulation to that effect between them and defendant with the approval of the Department of Labor.

After several incidents raised by the Commonwealth and extensions requested by it, defendant answered the complaint on January 31, 1964. It alleged that the court lacked jurisdiction because the matter was appropriate to be submitted to the grievance proceeding and afterwards to arbitration, under the collective agreements existing between the parties.

On June 25, 1964 the trial court dismissed the complaint without going to the merits because it understood that the prospective effect this Court gave to its judgment in *Pérez* v. *Water Resources Authority*, 87 P.R.R. 110 (1963), applies solely to enterprises covered only by the laws of Puerto Rico, as in that case, and not to enterprises covered by the Federal Fair Labor Standards Act such as defendant herein. It decided that these complaining workers should first resort to the arbitration mechanism. We issued the writ of review.[1]

Section 14 of Act No. 379 of 1948 provides that every employer shall post a notice setting forth the number of hours of work required during each day of the week, the hours of beginning and ending work, *and the hour when the period for taking food begins and ends, which shall not be less than an hour*, unless for the convenience *of the employee* and by *stipulation* of said employee and his employer, with the approval of the Department of Labor, a shorter period is fixed.

Act No. 121 of June 27, 1961 amended § 14 by adding that every employer who employs or permits an employee to work during the time fixed for taking food *will be obliged to pay for said hour or fraction of hour at a wage rate*

---

[1] Defendant brought up the lack of jurisdiction on our part because the notice was not served on time. We checked the contention against the record and dismissed it inasmuch as we issued the writ on September 11, 1964. The proceeding was filed on June 4, 1965.

*equal to double* the regular rate agreed per hour. See Act No. 88 of June 22, 1962.

■ The workers' claim is limited to double rate at mealtime. This right was granted by law as of June 27, 1961 and not before. Prior to that date a violation of § 14 regarding mealtime could give rise to other sanctions, but not to double pay, unless it had been so agreed in a collective agreement. The record does not show such an agreement in the case at bar.

■ When this Court held that its decision in *Pérez* had prospective effect as of January 25, 1963 when it was entered, it made no distinction between enterprises under local legislation only and those to which the federal legislation on Labor Standards is applied. Such a distinction was unnecessary and superfluous, precisely, because what the case of Pérez does is to assimilate the case law rule developed under federal legislation applicable to enterprises governed by said legislation, and incorporate said rule into our labor jurisdiction. Aside from the fact that we are in no condition to assure that the enterprise in the *Pérez* v. *Water Resources Authority* case is an enterprise to which only the legislation of Puerto Rico is applicable, under the jurisdictional guides of the National Labor Relations Board as sanctioned by Congress, and under the definition for "commerce" in the Taft-Hartley Act itself. We referred to those jurisdictional guides or to some of them in *Labor Relations Board* v. *Milares Realty, Inc.*, 90 P.R.R. 821 (1964).

Under federal legislation violations of collective agreements do not have an administrative forum as they do under ours when treated as unfair practices. Those violations have to be elucidated in the courts under § 301 of the Taft-Hartley Act, 61 Stat. 156. Hence, pursuant to the most convenient and desirable practices within the objects and purposes of

the labor laws, the federal case law rule has developed in the sense of enlarging the contents of the grievances and arbitration clauses of the bargaining agreements so as to include, in a comprehensible fashion, all kinds of disputes for violations, without excluding thereby those involving claims for wages. Nevertheless, the dispute must bear some relation with the agreement itself and its covenants.[2]

In the *Pérez* case itself the collective agreement's text contained a clause by virtue of which the Authority was bound to pay a double wage rate for the excess, if it permitted any employee to work more than eight (8) hours a day or 44 during the week. It is clear that the right of those workers to double pay in excess of 44 hours, stemmed from the collective agreement itself and not from the law.

■ In this case the right of the workers arises from a provision of law which is adopted for the first time on June 27, 1961. The collective agreement in effect at the time and on January 24, 1962, when the complaint was filed, had been executed on April 11, 1961. It did not have any provision regarding compensation for lunch time. Turning to our reasoning to make our decision in *Pérez* only prospective, a dispute arising from a nonexistent right at that time either by law or by agreement, could hardly be in the minds of the contracting parties on April 11, 1961. That prospective effect we gave to the judgment in *Pérez* is a matter of our own making which in no way conflicts with the federal case law rule, even in the case of an enterprise engaged in interstate commerce, particularly in the case at bar which involves a right protected by Puerto Rican substantive law only and is not protected by federal substantive law.

---

[2] See: *Republic Steel* v. *Maddox*, 379 U.S. 650; *Packinghouse Workers* v. *Needham*, 376 U.S. 247; *Drake Bakeries* v. *Bakery Workers*, 370 U.S. 255; *Smith* v. *Evening News Ass.*, 371 U.S. 195; *Teamsters Local* v. *Lucas Flour Co.*, 369 U.S. 95; *Dowd Box Co.* v. *Courtney*, 368 U.S. 502; *Textile Workers* v. *Lincoln Mills*, 353 U.S. 448.

■ Aside from what we have said, let us look at the practical purpose which should have been kept in mind by the trial court in view of the immovable public policy, effective for over half a century, to the effect that the claims of workers be heard promptly. Neither the Grievance Committee nor an arbitrator could effectively order that these workers be not paid double rates for mealtime as provided by Act No. 121. They could not construe any part of the agreement to lead to a different result. It would remain solely to the arbitrator to decide whether or not, in fact, all, one, or which one of the laborers worked during the meal period. The trial court may reach such a determination which does not involve the interpretation of the agreement, if it wishes, by appointing an official examiner to receive the evidence on that aspect. We do not see, then, either the necessity or the practicability of removing the matter from the court and delivering it to a committee with the inevitable waste of time.

This case which involves a claim for wages has been in litigation for three and a half years and it has not yet been heard on its merits. The courts and the attorneys should not lose sight of the fact that there is a clear legislative mandate that this kind of cases shall not be unduly delayed.

The judgment dismissing the complaint shall be reversed and the record remanded for the claim to be litigated on the merits and for any further proceeding compatible with the foregoing.