**PENCE CONSTRUCTION CORPORA-TION, Plaintiff-Appellee,**

v.

**HOISTING AND PORTABLE ENGI-NEERS LOCAL 450 OF the INTERNA-TIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Defendant-Appellant.**

No. 73–1334
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 30, 1973.

Rehearing Denied Oct. 4, 1973.

---

* Rule 18, 5 Cir.; *see* Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I.

W. Arthur Combs, W. Dickinson Yale, Jr., Houston, Tex., for defendant-appellant.

A. J. Harper, II, L. G. Clinton, Jr., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

In this appeal from an award of damages for losses resulting from a labor strike, we are asked to determine whether a union that has engaged in a strike in violation of a collective bargaining agreement is relieved of liability in damages by reason of the contracting company's prior breach of the same agreement. The United States District Court for the Southern District of Texas held that prior breach does not preclude the payment of damages, and awarded the injured company $10,450.00, as stipulated by the parties. We affirm.

The events that bring these litigants before us commenced on January 16, 1970, when Pence Construction Corp. [hereinafter "the Company"] discharged a shop steward, Charles Fitts, from his employment as an Operating Engineer at the Company's Texas Instruments, Inc. job site in Stafford, Texas. Shortly before his discharge Fitts had been elected "Building Trades Steward" for Hoisting and Portable Engineers Local 450 [hereinafter "the Union"], and in that capacity represented all employees on the job site. The Company claimed that it had fired Fitts for various unspecified acts of misconduct. The Union claimed that the Company had fired Fitts, in violation of the collective bargaining agreement, for engaging in lawful Union activities. The Union struck and established a picket at the Texas Instruments job site on January 19, 1970.

The following day the Company filed application in state district court for a temporary restraining order enjoining the Union from picketing and striking. The court granted the restraining order, and contemporaneously ordered the Company to reinstate Fitts to his previous employment. The Union then removed the case to federal district court.[1] On January 26, 1970, after renewal of Union picketing, the District Court ordered the Union to submit to grievance and arbitration procedures under the collective bargaining agreement.[2]

The Arbitrator determined that both parties had violated the collective bargaining agreement. He found that the Company had fired Fitts because of activities in his capacity as Union steward, and ordered that Fitts be reinstated with full seniority and back pay. Then, holding that the Union had violated Article V of the agreement[3] by establishing and maintaining picket lines on January 19, 20, and 26, and February 2 and 3, the Arbitrator ordered the Union to cease and desist from picketing at the Company's Texas Instruments job site. Prior to the hearing before the Arbitrator, the Company and the Union had entered into a written agreement excluding

---

1. The District Court had original jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1970).

2. The strike continued on February 2 and 3, 1970, after dissolution of the state court's restraining order.

3.  "ARTICLE V
"Grievance Procedure
"It is agreed that all disputes, other than those pertaining to jurisdictional disputes, that may arise on any job covered by this Agreement shall be handled in the following manner without any person permitting or causing the grievance to cause a work stoppage or interfere in any way with the progress and prosecution of the work.
  . . . ."

from arbitration the issue of damages suffered by the Company as a result of the strike.

Following arbitration the Company filed a Motion for Enforcement of Arbitrator's Award in the District Court. The parties entered a Stipulation that the Company had suffered actual damages in the amount of $10,450.00 as a result of the Union's strike and picketing. On September 15, 1972 the trial judge entered a final order adopting the Arbitrator's findings, rejecting the Union's argument that the prior breach of the agreement by the Company precluded damages, and awarding damages to the Company in the amount stipulated by the parties.

Seeking reversal of the damage award in this Court, the Union contends that the District Court erred in three respects: (1) by awarding damages to a party which itself was guilty of a prior breach of the agreement; (2) by awarding damages for an alleged safety strike; and (3) by excluding the testimony of the Union's business representative. We find none of these contentions persuasive.

I

The parties apparently agree that the District Court's order compelling arbitration was proper.[4] In enforcing the Arbitrator's decision and awarding damages to the Company, the District Court was merely requiring the Union to respond in damages for its breach of contract in the same manner the Company had been required to expend damages, in the form of back pay, for its own breach. We are compelled to uphold this even-handed result, not only by our sense of justice, but also by the unmistakable precedential commands of two decades of federal labor law decisions.

The courts have long recognized that a party who breaches a collective bargaining agreement may be held accountable in damages. *See e. g.,* Drake Bakeries v. Local 50, American Bakery & Confectionery Workers, 1962, 370 U.S. 254, 266, 82 S.Ct. 1346, 8 L.Ed.2d 474; Local 653, Int'l Union of Operating Eng'rs v. Bay City Erection Co., 5th Cir. 1962, 300 F.2d 270, 272–273. That concept is not challenged by the parties here.

The Union urges, however, that an exception to this well established principle be implied from Texas' general contract law. The Union alleges that, under Texas law, material violation of a contract by one party relieves the other party of any further obligation to comply with its provisions. Even assuming the accuracy of this statement of the Texas law, the application of state law to a suit under Section 301 of the Labor Management Relations Act would be wholly inappropriate. In Textile Workers Union v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, the Supreme Court outlined the comparative roles of state and federal law in Section 301 suits:

> "We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws . . . . Federal interpretation of the federal law will govern, not state law . . . . But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy."

*Id.,* 353 U.S. at 456–457, 77 S.Ct. at 918, 1 L.Ed.2d at 980–981.

Uniformity in the formulation and application of labor laws is essential to the effective administration of collective

---

4. Indeed, that order was compelled by clear mandate of the Supreme Court in the *Steelworkers* trilogy. United Steelworkers v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers v. Warrior & Gulf Nav. Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

bargaining agreements. Local 174, Int'l Brotherhood of Teamsters v. Lucas Flour Co., 1962, 369 U.S. 95, 103, 82 S. Ct. 571, 7 L.Ed.2d 593, 599. The uniformity so avidly sought clearly would not be well served by the interpretation of Texas contract law offered by the Union. Federal labor policy does not view collective bargaining agreements as ordinary contracts. The collective bargaining agreement is sui generis, providing the basis for individual contracts of employment; as such, it has always been a favorite of the law. J. I. Case Co. v. N.L.R.B., 1944, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762. Because the collective bargaining agreement is the foundation for a broad network of relationships, the tools to destroy its tensile strength must indeed be sturdy and steady, not weak and reedy. We must not permit the peccadilloes or peculiarities of a particular state, honored and hallowed though they be by time, to undermine a national approach to collective bargaining contracts. Contractual parochialism would destroy that uniformity in construction of such contracts which federal labor policy has made a paramount desideratum.

As indicated above, federal labor law contemplates damage awards for strikes in violation of collective bargaining agreements. No exception to that rule has been established for situations involving a prior breach of the agreement by the employer. To the contrary, grievance procedures constitute an integral part of the collective bargaining contract, so that a dispute over one aspect of the agreement can be resolved without impairing other contractual rights and obligations. In *Drake Bakeries, supra,* the Supreme Court declared that "[a]rbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach." 370 U.S. at 262, 82 S.Ct. at 1351, 8 L.Ed.2d at 480.

In Local 721, Packinghouse Workers v. Needham Packing Co., 1964, 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680, a case involving facts similar to those in the case before us, the Court reaffirmed this position. The company discharged an employee, and 190 union members responded by striking. The company opposed arbitration on the ground that the union had "repudiated and terminated the labor agreement." Rejecting that argument, the Supreme Court held that the duty to arbitrate remained in force even though the union had violated its agreement, and that the company could prosecute and recover on its claim for damages resulting from the strike.

This Court has recently affirmed a district court decision containing a similar ruling. In Dow Chemical Co. v. International Union of Electrical Workers, M.D.Fla.1971, 82 LRRM 3169, 3181, aff'd 5th Cir., 480 F.2d 433, 1973, the district court noted that even if the terminations of employees that caused the strike were unlawful, they would not have legitimized the strike, because: grievances concerning the terminations could have been carried through the contractual grievance procedures within a reasonable time; the terminations did not constitute a flagrant unfair labor practice; and the terminations were not of such a nature as to threaten ouster of the union or destruction of the bargaining relationship. These same considerations apply to the case before us. Although situations may arise in which an employer's breach of a collective bargaining agreement will justify a union's breach of a no-strike clause, no such situation has been presented to us here. We therefore hold that the Union was not relieved of liability in damages because of the Company's prior breach of the collective bargaining agreement.

## II

The Union contends also that the District Court erred in awarding damages to the Company because the Union was engaged in a strike involving safety conditions. The principle invoked by the Union is a significant one in a developing area of the law. Section 502 of

the Labor Management Relations Act, 29 U.S.C. § 143 (1970), provides in part:

". . . nor shall the quitting of labor by an employee or employees in good faith because of abnormally dangerous conditions for work at the place of employment of such employee or employees be deemed a strike under this chapter."

*See* Gateway Coal Co. v. United Mine Workers, 3d Cir. 1972, 466 F.2d 1157, cert. granted 410 U.S. 593, 93 S.Ct. 1418, 35 L.Ed.2d 686; Hanna Mining Co. v. United Steelworkers, 8th Cir. 1972, 464 F.2d 565; Missouri-K.-T. R.R. v. Brotherhood of R.R. Trainmen, 5th Cir. 1965, 342 F.2d 298; N.L.R.B. v. Knight Morley Corp., 6th Cir. 1958, 251 F.2d 753, cert denied 357 U.S. 927, 78 S.Ct. 1372, 2 L.Ed.2d 1370, reh. denied 358 U.S. 858, 79 S.Ct. 15, 3 L.Ed.2d 93.

■ We endorse the philosophy underlying Section 502 and the decisions protecting safety strikes—that the health and safety of working people take precedence over the easing of industrial strife. Nevertheless, we are unable to glean from the briefs or the record herein any fact or shred of evidence to indicate that the Union merits the statute's protection. The Union cites no "abnormally dangerous conditions" and makes no claim that any employee was placed in unusual danger. Neither the Arbitrator nor the District Judge found unsafe working conditions to be the genesis of the employees' exodus. The sole motivation for the strike appears to be the discharge of the Union's shop steward. The Arbitrator found that the steward's insistence that the Company make the premises safe was a reason for his dismissal. The firing of a safety protagonist, however, is not proof of unsafety. That alone, in the absence of any allegation of particular dangerous conditions, is insufficient to make this work stoppage a safety strike. *See* Hanna Mining Co. v. United Steelworkers, *supra,* 464 F.2d at 568 n. 2. On the basis of the evidence presented, we cannot say that the Arbitrator and the District Court erred in declining to clothe this garden variety strike with the protective garments of Section 502.

### III

■ Finally, the Union charges that the District Court erred by excluding the testimony of the Union's business representative, Robert L. Johnson. We do not agree.

Johnson was the only witness presented to testify at the District Court's hearing on the Company's damage claim. Upon objection by counsel for the Company, and upon ascertaining that Johnson had previously presented his testimony before the Arbitrator, the Court excluded Johnson's testimony as irrelevant.

The Arbitrator, after hearing Johnson's testimony, had made written findings as to the liability of the parties. The District Court properly adopted a presumption of unarbitrariness about the Arbitrator's findings and chose not to rehear the evidence on which those findings were based. Pursuant to Fed. R.Civ.P. 10(c), the Union has filed a Statement in Lieu of Transcript, containing the evidence witness Johnson would have presented if his testimony had not been excluded. (App. 96.) Our examination of Johnson's statement reveals no evidence that would have led the District Court to a different result. We conclude that, even if the trial judge should have resolved his doubts in favor of admissibility, United States v. Lykes Brothers Steamship Co., 5th Cir. 1970, 432 F.2d 1076, 1077, his failure to do so did not "affect the substantial rights of the parties," and thus did not constitute reversible error. Fed.R.Civ.P. 61.

### CONCLUSION

The decision of the District Court comports with both law and reason. National labor policy, as implemented by decisions of the federal courts, clearly mandates that the Union not be relieved of liability in damages by reason of the Company's prior breach of the collective

bargaining agreement. That policy is not so portable that it may be readily displaced by discordant principles of state contract law. Moreover, we decline to hoist the Union's work stoppage to the protected status of a safety strike. Finally, we find the exclusion of the Union business representative's testimony totally devoid of noxiousness, and the objection to same devoid of merit. Consequently, we uphold the decision of the District Court and affirm its award of recompense to the Company.

Affirmed.