**CHILDREN'S REHABILITATION CENTER, INC., a corporation, Appellant,**

**v.**

**The SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL NO. 227, AFL–CIO.**

**No. 73–1748.**

United States Court of Appeals, Third Circuit.

Argued Jan. 18, 1974.

Decided Aug. 7, 1974.

Certiorari Denied Dec. 23, 1974.

See 95 S.Ct. 681.

Seitz, Chief Judge, dissented and filed opinion.

Donald T. O'Connor, Randolph & O'Connor, Pittsburgh, Pa., for appellant.

Condon, Klocke, Ange, Gervase & Sedita, Buffalo, N. Y., Louis B. Kushner, Pittsburgh, Pa., for appellee; Grace Marie Ange, Buffalo, N. Y., of counsel.

Before SEITZ, Chief Judge, and HASTIE and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

On motion, the district court dismissed, for failure to state a claim upon which relief could be granted, an employer's action for money damages for breach of contract against a union that represented its employees. The action was brought under Section 301 of the Labor-Management Relations Act of 1947. 29 U.S.C. § 185.

The complaint alleged that a strike, which had begun on December 4, 1972 and was still in progress, had been called by the union in violation of a no strike provision in the parties' labor contract. For this breach damages were claimed in the amount of $550 per day, beginning December 4, 1972. The complaint also alleged that "on Friday, December 15, 1972, the work stoppage not having terminated, the Plaintiff notified the Defendant that it considers the Agreement to be terminated in its entirety".

It was the theory of the district court that the employer's admitted December 15 election to "terminate" the labor contract "in its entirety" deprived it of the remedy it now seeks.

In cases arising under Section 301 of the Labor-Management Relations Act the courts of the United States are shaping a national common law of labor relations. In that process it has been established that a violation of a no strike provision of a comprehensive la-

bor contract does not *ipso facto* relieve the employer of the complex of legal obligations that the contract has imposed upon it. Drake Bakeries, Inc. v. Local 50, American Bakery Workers, 1962, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474; Local Union No. 721, United Packinghouse, F. & A. Workers v. Needham Packing Co., 1964, 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680. However, the cited cases do not reach the question whether such a breach could empower the employer, by a clear pronouncement to the union, unilaterally to abrogate the entire labor contract. That remedy for material breach of a contract was available at common law "at the option of the injured party, and it should be, and in general is allowed . . . for any breach of contract of so material and substantial a nature as would constitute a defense of an action brought by the party in default for refusal to proceed with the contract". 12 Williston, Contracts, 3d ed. 1970, 186.

■ The district court, properly cited Boeing Airplane Co. v. Aeronautical Industrial District Lodge 751, I. A. M., W.D.Wash.1950, 91 F.Supp. 596, aff'd., 9th Cir. 1951, 188 F.2d 356, cert. denied 342 U.S. 821, 72 S.Ct. 39, 96 L.Ed. 621, as a precedent for the recognition of such power where a labor contract has been breached by a prohibited strike. *Accord,* United Electrical R. & M. Workers v. N. L. R. B., 1955, 96 U.S.App.D.C. 46, 223 F.2d 338. See also Local Joint Executive Board v. Nationwide Downtowner Motor Inns, Inc., W.D.Mo.1964, 229 F.Supp. 413, 416. Moreover, in the present case, the union has acquiesced in and now relies upon the termination of the labor contract. Therefore, the district court correctly stated in its dispositive order "that plaintiff cannot properly claim damages for continuing breach of labor contract . . . [after] December 15, 1972. . . ."

However, in dismissing the complaint the court denied relief for injury sustained before as well as after the December 15 contract termination, despite the claim for damages in the amount of $550 dollars per day, beginning December 4, 1972, and despite the fact that jurisdiction under Section 301 does not depend upon the amount in controversy.

It is arguable that the injured party's abrogation of a breached labor contract should be effective only to free the parties of future obligations under their comprehensive long term bargain, and not to destroy any cause of action for pre-termination damages attributable to the breach. But we think that limitation should not be recognized in the evolving federal common law of labor relations.

■ A detailed labor contract promotes economic stability by defining terms and conditions of employment, usually for a term of several years. After most strikes, whether legal or illegal, that occur while a labor contract is in effect, work is resumed with a large part, if not all, of the labor contract intact. Certainly such continuity in the mutually agreed terms and conditions of employment is in the public interest and should be encouraged. On the other hand, fairness to an employer confronted by an illegal strike may dictate judicial recognition of contract abrogation or damages as alternative available remedies. But it is neither necessary nor desirable to encourage the termination of labor contracts by allowing both remedies. From this viewpoint, the loss of the right it otherwise would have to collect damages for a breach is not an unfair price for an employer to pay if it insists upon total and permanent relief from the obligations it accepted under a labor contract.

Accordingly, the judgment will be affirmed.

SEITZ, Chief Judge (dissenting).

Plaintiff appeals from the dismissal, for failure to state a claim, of its damage action against defendant union for striking allegedly in violation of the parties' contract. Plaintiff's complaint states that plaintiff notified defendant

that the strike not having ceased after a demand by plaintiff it "consider[ed] the Agreement to be terminated in its entirety." The district court apparently concluded that this language amounted to a rescission of the collective bargaining agreement and that, having elected to rescind, the employer could not sue for damages.

Preliminarily, I note that the parties neither in their briefs nor in their argument here or, so far as appears from its order, in the district court questioned the existence of plaintiff's right unilaterally to abrogate the entire labor agreement in response to defendant's violation of a no-strike clause in the contract. Were I called upon to decide that issue, which is reached by the majority, I doubt that I could find allowing rescission of a labor contract consistent with the federal labor law.

. Certainly, this issue cannot be resolved simply by reference to rules governing traditional contractual relations; in suits such as this over bargaining agreements we must fashion a federal "common law," guided by the policies of the federal labor laws. Textile Workers v. Lincoln Mills, 353 U.S. 448, 456–457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). One of the primary goals of our national labor laws is the promotion of industrial peace. To that end, parties are encouraged to enter into contracts, after collective bargaining, regulating the conduct of labor relations between them. While the parties cannot be forced by the NLRB or the courts to enter such an agreement, and the terms of any agreement are determined by the parties, where these terms are unclear the courts will interpret them in a manner likely to encourage stable and orderly labor relations. Contractual mechanisms for resolving disputes are interpreted broadly, United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and activities undermining agreed upon means of dispute resolution are held "implicitly" proscribed. Gateway Coal Co. v. United Mine Workers, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); Local 174 v. Lucas Flour Co., 369 U.S. 95, 105–106, 82 S.Ct. 571, 7 L. Ed.2d 593 (1962).

Where parties have not clearly agreed to make their labor contract rescindable by the aggrieved party on breach, this policy of encouraging stable labor relations would seem to militate against interpreting bargaining agreements to allow rescission. If rescission is allowed in response to a strike or lockout, the whole contractual relation between the parties is destroyed; there is no contract to which to return after resolution of the often limited issue over which the strike or lockout occurred. And where, as here, the parties dispute whether there has in fact been a rescission, the resultant uncertainty is likely to prolong the disruption caused by the initial disagreement. During the lengthy period required for judicial resolution of this issue, the parties will differ not over a single substantive provision, but over the existence of any live agreement governing their relations. Certainly, there may be a limited deterrent effect in allowing the threat of rescission to check strikes and lockouts. I cannot, however, conceive that this benefit could offset the substantial disruption that allowing rescission would cause.

These policies which should control a decision, when appropriate, on the existence of a right to rescind, should also control our selection of a standard for finding rescission in this case. Assuming, as I must, that material breach of a collective bargaining agreement permits the aggrieved party to rescind the entire agreement, I would require that clear evidence of an intent to rescind must be produced by the party claiming that consequence.

The only permissible basis for finding an intent to rescind by the employer was plaintiff's statement that "it consider[ed] the Agreement to be terminated in its entirety." This communication is couched in language that parties, courts and commentators have used for numerous disparate purposes. Although, for

instance, an aggrieved party's notification to the breaching party that the contract was "terminated" has been held to show rescission, Boeing Airplane Co. v. Aeronautical Ind. District L. No. 751, 91 F.Supp. 596, 613 (W.D.Wash.), aff'd, 188 F.2d 356, 357 (9th Cir.), cert. denied, 342 U.S. 821, 72 S.Ct. 39, 96 L.Ed. 621 (1951), there are numerous other instances where both courts and commentators have held that use of the word "termination" conveys quite different meanings, some consistent with retention of the damage remedy. 12 S. Williston, Contracts § 1455, n. 2 (3d ed. 1970); 5A A. Corbin, Contracts § 1236 (1964). Even the word "rescind" is used in situations where the contract is still in force. 12 S. Williston, Contracts § 1454A (3d ed. 1970).

In light of the conflict the inference of rescission may have with the federal labor law and the different uses of the words employed by plaintiff, some consistent with retention of a damage claim, I believe the district court erred in finding, as a matter of law, that the plaintiff's letter was clear evidence of plaintiff's intent to rescind.

Since the evidence of plaintiff's intent to rescind was not conclusive of rescission as a matter of law, I believe the issue was not properly reached on a motion to dismiss. Rather, the issue here was for the jury under proper instructions. If the jury found that plaintiff intended to rescind the contract, it also would be required to determine whether defendant relied on the rescission before the plaintiff declared his intent that the contract still have force. Only if both rescission and reliance are found should plaintiff's damage claim be held barred.

Under the majority opinion, both these issues are taken from the jury. They have found not only that plaintiff's intent to rescind appears conclusively from its communication, but also that defendant has relied on plaintiff's rescission sufficiently to bind plaintiff to its election of remedies. Thus, they state that ". . . the union has ac-

quiesced in and now relies upon the termination of the labor contract." I believe that, even under traditional contract doctrines, it is irrelevant that defendant *now* relies on the rescission as a defense to plaintiff's damage suit. To bar plaintiff's damage claim, defendant must have relied to its detriment on plaintiff's rescission before learning of plaintiff's "changed" position, i. e., that it did not consider the contract rescinded.

The only basis for inferring that defendant relied on plaintiff's alleged rescission is the continuance of the strike. Although defendant claims it would not have prolonged the strike but for plaintiff's statement that the contract was terminated, this claim is hardly sufficient to establish reliance as a matter of law. The fact finder might well conclude that the continuance of the strike was not based on the union's present interpretation of plaintiff's communication.

For all these reasons I respectfully dissent.