**LOCAL LODGE NO 595 OF DISTRICT NO. 152, INTERNATIONAL ASSOCIATION OF MACHINISTS, Appellant,**

v.

**HOWE SOUND COMPANY (INC.), PENNSYLVANIA ELECTRIC STEEL CASTINGS DIVISION.**

**No. 15052.**

United States Court of Appeals Third Circuit.

Argued May 3, 1965.

Decided Sept. 2, 1965.

Edward Davis, Philadelphia, Pa. (Clarence C. Mendelsohn, Reading, Pa., on the brief), for appellant.

Oliver C. Biddle, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellee.

Before KALODNER, HASTIE and FREEDMAN, Circuit Judges.

FREEDMAN, Circuit Judge.

Plaintiff Union brought this action against the Company under § 301(a) of the Labor-Management Relations Act, 29 U.S.C.A. § 185(a), to account for holiday pay and pro rata vacation pay which it claims is due to employees whom it represents.

Plaintiff and defendant each moved for summary judgment; defendant also moved for dismissal of the complaint. Affidavits were filed on each side and the court below ultimately denied plaintiff's motion for summary judgment and granted defendant's motions for summary judgment and for dismissal of the complaint. Since affidavits were filed on both sides defendant's motion to dismiss the complaint must, of course, be deemed to be absorbed in its motion for summary judgment. See Rule 12(b).

The Union was the exclusive collective bargaining representative for the Company's employees at its Pennsylvania Electric Steel Castings Division at Hamburg, Pennsylvania. The most recent collective bargaining agreement between the parties became effective on October 1, 1960 and although originally expiring on May 31, 1961, was supplemented and extended to September 29, 1962 and then to October 30, 1962. In July 1962

the parties began to negotiate a new collective bargaining agreement. On October 24, 1962, after numerous negotiating sessions the Company advised the Union of the possibility of a discontinuance of its operations at the Hamburg plant and announced that all employees in the collective bargaining unit represented by the Union had received notices of layoff effective October 31, 1962. After a number of additional negotiating meetings the Company informed the Union at a meeting on October 29, 1962 that it had decided to close the plant as of October 31, 1962. On that date the plant was in fact shut down by the Company and was not reopened thereafter. Five further negotiating meetings were held between the parties during the course of which the Union demanded payment of holiday pay and pro rata vacation pay on the ground that these were due to the employees under the collective bargaining agreement.

The claim for holiday pay was made for Thanksgiving Day 1962 on the ground that it fell within the provision of the agreement for payment to employees on *layoff* who had worked within 30 days prior to the holiday.[1] The claim for pro rated vacation pay is based on a provision that an employee who *leaves* the Company for any reason should receive pro rata vacation pay within 30 days "after his termination." [2]

The conflicting contentions of the parties regarding the meaning of these provisions therefore bring into play Article XXI of the collective bargaining agreement. Therein is declared the general intention of the parties that in the event that differences should arise between the Company and the Union "as to the interpretation, application of, or compliance with" the provisions of the agreement, there should be no work stoppage or strike, but instead "an earnest effort shall be made to settle the matter promptly" under the procedure prescribed. There follows a four-step procedure beginning with the committeeman and the foreman of the department, and going on to the shop committee chairman and the superintendent of the department involved, and then the Union's representative and the general manager or his representative and members of the shop committee, and finally to arbitration. When a grievance involves a group or entire department the first step may be dispensed with and the matter may be presented in writing under the second step.

The agreement requires that grievances must be submitted in writing not later than seven days after the occurrence of the acts causing the grievance. (§ 21.4 (a)). Grievances not appealed within ten days from the date of the Company's answer in any step "shall be considered settled on the basis of the Company's last answer * * *" (§ 21.4(b)). Finally, provision is made that in order to be subject to arbitration the grievance must be submitted by the aggrieved party to arbitration within ten days after the decision in the third step. (§ 21.4(c)).

The time for taking the various steps in the grievance procedure culminating in the demand for arbitration has long since expired. It is acknowledged that neither party sought arbitration during the period of extension of the agreement or after the extensions expired at the end of October 1962, although they continued their negotiations until May 1963; nor was arbitration sought in the period between the end of the negotiations in May 1963 and the filing of this action on December 12, 1963.

---

1. Article XII, § 12.3 establishes Thanksgiving Day as a paid Holiday. Section 12.6 provides that, "Holiday pay shall be paid to employees on layoff or leave of absence allowed under the terms of this Agreement * * * when such employee has worked within thirty (30) days of any such Holiday."

2. Article XIII, § 13.1 provides: "The Company agrees to grant paid vacations as set forth in this Article." Section 13.4 provides: "An employee who leaves the Company for any reason shall receive pro rata vacation pay, not later than 30 days after his termination. * * *"

The claims for holiday pay and pro rata vacation pay are made by the Union under specific provisions of the collective bargaining agreement. The controversy on these claims is by now a classic illustration of a dispute which falls within a general arbitration provision such as that contained in the present agreement.[3] The right to holiday and pro rata vacation pay exists, if at all, under the agreement. The fact that it would accrue and become payable after the expiration of the agreement would not eliminate the Company's obligation.[4] Since the Union's claim is founded on the expired agreement it is also bound by the arbitration provision of the agreement, even though the issue may not have been raised until after the expiration of the agreement.[5]

We need not now determine the exclusivity of the arbitration provisions of the agreement. For the Union makes the alternative argument that we should treat the defendant's motions as motions to stay proceedings pending arbitration. Although this was not raised in the court below, arbitrability of the dispute was basic to the Company's defense. In these circumstances dismissal of the action by the court, rather than a stay of the proceedings pending arbitration, would be unjustified.[6] The meaning of the contract provisions establishing the grievance machinery and the effect of the closing of the plant on them and on the timeliness of the request for arbitration,[7] are, of course, matters to be decided by the arbitrator.[8] We do not indicate any view on these questions or on the merits of the Union's claims. These are matters which we will not decide in a factual vacuum and which are peculiarly for an arbitrator familiar with industrial and labor practices. In these circumstances we do not now decide whether any judicial action on this claim will be appropriate after an arbitrator has acted upon the controversy should it be submitted to him.

3. The agreement provides that in the event that differences as to the "interpretation, application of, or compliance with the provisions" of the agreement should arise between the Company and the Union there should be no work stoppage or strike, but instead "an earnest effort shall be made to settle the matter promptly" under the grievance and arbitration procedure (Article XXI, § 21.1). It describes the arbitrator as having "jurisdiction and authority to interpret, apply or determine compliance with the provisions contained" in the agreement. (Article XXI, § 21.2).

4. See Amalgamated Meat Cutters, etc., Local 195 v. M. Feder & Co., 234 F.Supp. 564 (E.D.Pa.1964); General Tire & Rubber Co. v. Local No. 512, etc., 191 F. Supp. 911 (D.R.I.1961), aff'd 294 F.2d 957 (1 Cir. 1961); John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

5. See Piano & Musical Inst. Workers Union, Local 2549, etc. v. W. W. Kimball Co., 379 U.S. 357, 85 S.Ct. 441, 13 L. Ed.2d 541 (1964), reversing 333 F.2d 761 (7 Cir. 1964). See also General Tire & Rubber Co. v. Local No. 512, etc., supra, n. 4, 191 F.Supp. at 914.

6. See Swartz & Funston, Inc. v. Bricklayers, Masons and Plasterers International Union of America, 319 F.2d 116 (3 Cir. 1963); Genesco, Inc. v. Joint Council 13, United Shoe Workers of America, 341 F.2d 482 (2 Cir. 1965); American Sugar Refining Co. v. The Anaconda, 138 F.2d 765 (5 Cir. 1943), aff'd without discussion of this issue, 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117 (1944); Drake Bakeries v. Local 50, Amer. Bakery & Confect. Workers, 370 U.S. 254, 267, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

7. Compare Republic Steel Corp. v. Maddox, 379 U.S. 650, 659, 85 S.Ct. 614, 13 L.Ed. 2d 580 (1965) with Local Union No. 721, United Packinghouse, Food & Allied Workers v. Needham Packing Co., 376 U.S. 247, 253, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964).

8. International Telephone & Telegraph Corp. v. Local 400, etc., 286 F.2d 329, 332 (3 Cir. 1961); Radio Corporation of America v. Association of Professional Engineering Personnel, 291 F.2d 105, 110 (3 Cir. 1961), cert. denied, 368 U.S. 898, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). See General Warehousemen and Employees Union No. 636 v. American Hardware Supply Co., 329 F.2d 789, 793 (3 Cir. 1964), cert. denied, 379 U.S. 829, 85 S.Ct. 57, 13 L.Ed.2d 37 (1964). See also John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

We shall therefore direct that the order granting the defendant's motions for summary judgment and for dismissal of the complaint be vacated and that action upon the complaint be stayed pending arbitration.