648 F.2d 856
 107 L.R.R.M. (BNA) 2271, 91 Lab.Cas. P 12,725,
2 Employee Benefits Ca 1237
 FEDERATED METALS CORPORATION, a wholly owned subsidiary of
ASARCO, Incorporated
v.
UNITED STEELWORKERS OF AMERICA (AFL-CIO) and its Local
Union, No. 365, labor organizations and the
American Arbitration Association
Federated Metals Corporation,
Appellant in No. 80-1606
United Steelworkers of America (AFL-CIO), and its Local
Union, No. 365, labor organizations, Appellants in
 No. 80-1607
 Nos. 80-1606, 80-1607.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 13, 1981.
Decided April 28, 1981.
 
 Edward F. Ryan (argued), Laurence Reich, Rosemary Alito Hall, Carpenter, Bennett & Morrissey, Newark, N. J., for appellant in No. 80-1606.
 Daniel P. McIntyre, Asst. Gen. Counsel, Pittsburgh, Pa., (argued), Arnold Cohen, Rothbard, Harris & Oxfield, Newark, N. J., for appellant in No. 80-1607; Bernard Kleiman, Chicago, Ill., of counsel.
 Before SEITZ, Chief Judge, and ROSENN and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Federated Metals Corporation appeals from an order of the district court compelling the parties to arbitrate the disputed pension claims on the motion of the United Steelworkers of America (the Union) for summary judgment. The Union cross-appeals from an order of the district court denying its demand for arbitration of the disputed disability claims.
 
 I.
 
 2
 The Union and American Smelting & Refining Company (ASARCO), the parent corporation of Federated Metals, entered into a Collective Bargaining Agreement and a Pension and Disability Agreement in 1974.[1] In 1977, ASARCO closed part of its facility at Perth Amboy, New Jersey. Effective April 1, 1977, Federated Metals acquired the remaining portions of ASARCO's Perth Amboy facility. Federated Metals employed approximately ninety-four former ASARCO employees and assumed both the Collective Bargaining Agreement and the Pension and Disability Agreement. Both of these agreements were to expire on June 30, 1977.
 
 
 3
 During June of 1977, Federated Metals and the Union met to negotiate new agreements. When they failed to reach agreement, the Union commenced an economic strike and picketing against Federated Metals on July 1. Negotiations continued during the strike. After seven months of negotiations and six months of strike, Federated Metals considered negotiations to be at an impasse. It informed the Union of its decision to close the plant, and on January 11, 1978, it publicly announced this decision.
 
 
 4
 On April 7, 1978, the pension claimants filed claims for benefits under the Pension and Disability Agreement. The pension retirement benefits sought were 70/80 benefits, which provide for early retirement benefits at age fifty-five if an employee attains age plus continuous service credits of seventy years or more, or if he or she has not reached fifty-five and attains age plus continuous service credits of eighty years or more.[2] On April 24 and May 18, the disability claimants filed claims for disability benefits under the Pension and Disability Agreement. Neither the pension nor the disability claimants were eligible for benefits at the time the agreement expired. If it is permissible to consider events that occurred between the expiration date of the agreement and the plant shutdown, each claimant has met the factual prerequisites for qualifying for benefits.
 
 
 5
 Federated Metals denied the claims of both the pension and disability claimants. The Union filed a request for arbitration of these disputes, but Federated Metals filed a complaint in federal district court requesting a stay of the arbitration proceeding.
 
 
 6
 The Retirement Plan and the Disability Plan provide that the interpretation of the Plans and determinations as to eligibility under the Plans are reserved to the Pension Board for the Retirement Plan[3] and to the employer for the Disability Plan.[4] The Pension and Disability Agreement contains a limited arbitration agreement that subjects three types of disputes to arbitration: the number of years of continuous service; the claimant's age; and the cause of the permanent or total disability (for disability benefits).[5]
 
 
 7
 On January 23, 1980, the district court ruled from the bench on the parties' cross-motions for summary judgment. It ordered arbitration of the pension claims, finding that the subject matter of the Union's claim related to the number of years of service, which was arbitrable under the Pension and Disability Agreement. In ordering arbitration, the court found that the dispute arose under the agreement even though it arose after it had expired, and that the Union did not delay unreasonably in filing its claim for arbitration. Therefore, the court held that the pension claims were arbitrable under the reasoning of Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) (Nolde).
 
 
 8
 The court denied the Union's request for arbitration of the disability claims. It found that the grievances did not relate to age, to years of service, or to the cause of injury. Because only these three types of disputes were subject to arbitration under the Pension and Disability Agreement, the court ruled that the disability claims were not arbitrable.
 
 II.
 
 9
 Determining whether a particular grievance is arbitrable is a matter of contract interpretation; the parties may draft a narrow arbitration clause that excludes particular types of disputes from arbitration or that provides for termination of the arbitration agreement at the termination of the collective bargaining agreement. See, e. g., United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). However, the strong federal policy favoring arbitration as the method to resolve labor disputes should guide a court when it decides whether an arbitration clause covers a particular grievance. See United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (the Steelworkers Trilogy). Further, if the subject matter of a particular grievance is arbitrable, the fact that it arises after the collective bargaining agreement has expired does not necessarily abrogate the duty to arbitrate. See Nolde, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300.
 
 
 10
 With these principles in mind, we will examine Federated Metals' arguments, first advanced in the district court, that the pension disputes are not arbitrable. Federated Metals concedes that Nolde established a presumption of postcontract arbitrability. However, Federated Metals argues that the presumption is overcome in this case by two indications that the parties did not intend to submit these pension grievances to arbitration: (1) the Pension and Disability Agreement contains a narrow arbitration clause that is limited to three kinds of disputes and (2) the pension benefits accrued after the agreement had terminated, whereas the severance-pay claims in Nolde accrued before termination. Further, Federated Metals contends that it need not arbitrate over the pension disputes because the Union did not assert these claims within a reasonable time after the agreement had expired.
 
 A.
 
 11
 Federated Metals argues that the parties have not expressed the clear preference for an arbitral forum that was present in Nolde. It contends that the narrow arbitration clause contained in the Pension and Disability Agreement demonstrates that the parties did not intend to arbitrate pension disputes arising after termination of the agreement. Otherwise, according to Federated Metals, the arbitrator in effect would be deciding whether the substantive provisions of the Pension and Disability Agreement survive termination under the guise of deciding the number of years of continuous service. Federated Metals views this result as being inconsistent with such a narrow clause.
 
 
 12
 Although we agree that the Pension and Disability Agreement contains a narrow arbitration clause limited to three types of disputes and that the arbitration clauses in the Steelworkers Trilogy and Nolde were broad, we do not believe that the strong federal policy favoring arbitration operates only when there is a broad arbitration clause. We believe that the parties still express a clear preference for arbitration when they draft a narrow arbitration clause, they merely limit this preference to a narrow range of disputes.
 
 
 13
 We recognize that when the arbitration clause is narrow, a court may scrutinize the underlying grievance more closely to determine whether the subject matter of the dispute is arbitrable. However, a court does this not because the presumption of arbitrability is inapplicable, but because the parties have narrowed the court's focus from a determination of whether the dispute arguably relates to the collective bargaining agreement (or, more broadly, to "any dispute" between the parties), to a determination of whether the dispute arguably relates to a particular type of grievance. See Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp., 482 F.Supp. 308 (W.D.Pa.1980). When a court examines the underlying grievance to determine whether it is one that the parties have included in their narrow agreement to arbitrate, it should not deny arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. at 582-83, 80 S.Ct. at 1352-53. Therefore, even when the arbitration clause is narrow, doubts should be resolved in favor of arbitration.
 
 
 14
 We are not persuaded otherwise by Federated Metals' citation to Justice Brennan's concurring opinion in United Steelworkers v. American Manufacturing Co., 363 U.S. at 569, 80 S.Ct. at 1347 (concurring in all three cases comprising the Steelworkers Trilogy). After noting that the ambiguous exclusion clause in Warrior & Gulf suggested that the parties were more concerned with allowing the arbitrator to render decisions than with restraining the arbitrator's jurisdiction, Justice Brennan hypothesized:
 
 
 15
 The case might of course be otherwise were the arbitration clause very narrow, or the exclusion clause quite specific, for the inference might then be permissible that the parties had manifested a greater interest in confining the arbitrator; the presumption of arbitrability would then not have the same force and the Court would be somewhat freer to examine the merits.
 
 
 16
 Id. at 572-73, 80 S.Ct. at 1365. We believe that Justice Brennan was referring to the courts' increased freedom to scrutinize the underlying dispute to determine whether it was over an arbitrable issue. We do not interpret his statement as indicating that once a court has engaged in such increased scrutiny and has determined that the dispute at least arguably concerns one of the specified arbitrable issues, it should then refuse to resolve any doubt over arbitrability in favor of arbitration.
 
 
 17
 Moreover, Justice Brennan makes this statement only in describing the degree of permissible judicial scrutiny in determining whether the subject matter of a dispute is arbitrable. In this case, it is undisputed that the grievance would have been arbitrable if it had arisen during the life of the Pension and Disability Agreement. The Union asserts that the pension claimants have the requisite number of years of continuous service and the company contends that they do not. Thus, on its face, this dispute is over the number of years of continuous service, which is one of the three issues subject to arbitration. In calculating the number of years, the Union included time after the agreement had expired while the claimants were on strike because, in its view, termination of the agreement did not constitute a "break" in the number of years of continuous service. However, we do not view this dispute over whether termination of the agreement constituted a "break" as being any different from similar disputes during the life of the agreement concerning "breaks" in a claimant's continuous service. Therefore, we conclude that the subject matter of the pension dispute is arbitrable.
 
 
 18
 Having concluded that the pension dispute is over the number of years of continuous service, which is one of the types of issues covered by the arbitration clause, we now must determine whether the arbitration clause survived termination of the Pension and Disability Agreement. In making this determination, we are guided by the Nolde presumption favoring postcontract arbitration. We do not agree with Federated Metals that the fact that the parties have agreed to a narrow arbitration clause renders the Nolde presumption inapplicable. Although the arbitration clause reviewed in Nolde was broad, the Court did not rely on this fact in determining that it survived contract termination. Therefore, we will enforce the agreement to arbitrate unless there is a clear indication of an intent to submit disputes to arbitration only if they arise during the life of the agreement. Because we do not believe that the narrowness of the arbitration clause provides a sufficient indication of an intent to overcome this presumption, we will enforce the duty to arbitrate unless there are other indications of such an intent.
 
 B.
 
 19
 Federated Metals argues that the Nolde presumption applies only when employees have accrued certain rights during the life of the contract and realize them after expiration. In this case, the pension claimants had not accrued sufficient continuous service credits to be eligible for 70/80 benefits by June 30, 1977. Because the right to these benefits had not accrued or vested at the time the Pension and Disability Agreement expired, Federated Metals reasons that the arbitrator would necessarily be adding to the terms of the agreement if the benefits were awarded.
 
 
 20
 To support its position, Federated Metals emphasizes that the union in Nolde argued that the right to severance pay had accrued during the life of the collective bargaining agreement and the United States Court of Appeals for the Fourth Circuit found this to be significant in ordering arbitration. See Local No. 358, Bakery & Confectionery Workers v. Nolde Bros., Inc., 530 F.2d 548, 553 (4th Cir. 1975), aff'd, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). Although the Supreme Court noted that this was the union's argument, see 430 U.S. at 248, 97 S.Ct. at 1070, it did not appear to rest its decision on this ground. Instead, the Court found it significant that both the union's claim for the benefits and the company's refusal to pay them were based on differing perceptions of the expired collective bargaining agreement. The union maintained that the right to severance pay was a "vested" right, which did not terminate with the agreement, while the company viewed severance pay as a creation of the collective bargaining agreement, which terminated with that contract. See id. at 248-49, 97 S.Ct. at 1070. The Court reasoned that "it is clear that, whatever the outcome, the resolution of that claim hinges on the interpretation ultimately given the contract clause providing for severance pay. The dispute, therefore, although arising after the expiration of the collective-bargaining contract, clearly arises under that contract." 430 U.S. at 249, 97 S.Ct. at 1070 (emphasis in original).
 
 
 21
 We do not believe that the somewhat esoteric determination that the disputed right to a particular benefit has vested or accrued should control the decision whether the duty to arbitrate the dispute survives contract termination. When the parties have agreed to a broad arbitration clause, the duty to arbitrate survives termination of the agreement if the dispute arises under the expired agreement; when the parties have agreed to a narrow arbitration clause, the duty to arbitrate survives if the dispute is over one of the specified arbitrable subjects and arises under the expired agreement. It is not necessary that the disputed right have vested because there is nothing to prohibit the parties from agreeing that certain benefits might accrue after the contract has expired. For example, in United Steelworkers v. Fort Pitt Steel Casting, 598 F.2d 1273 (3d Cir. 1979) (Fort Pitt I), the collective bargaining agreement expressly provided that the company would continue to pay certain benefits as they accrued during a labor dispute after the collective bargaining agreement had terminated. Moreover, in Local No. 595, International Association of Machinists v. Howe Sound Co., 350 F.2d 508 (3d Cir. 1965), we held that claims for holiday pay and pro-rata vacation pay that allegedly accrued after contract expiration were arbitrable. In so holding, we reasoned that the "right to holiday and pro-rata vacation pay exists, if at all, under the agreement. The fact that it would accrue and become payable after the expiration of the agreement would not eliminate the Company's obligation." Id. at 511 (emphasis added).
 
 
 22
 The dispute here, like that in Nolde, turns on differing interpretations of the expired Pension and Disability Agreement, and thus arises under that agreement. Moreover, it arises over a subject the parties have agreed to arbitrate i. e., the number of years of continuous service. The Union interprets the Pension and Disability Agreement as allowing employees to accumulate additional service credits for two years after layoff, and as not providing that this right will be abrogated by expiration of that agreement. Therefore, when calculating the number of years of continuous service, the Union included time after the agreement had expired. As a result, the Union contends that the pension claimants have a sufficient number of years of continuous service to qualify for the benefits. On the other hand, Federated Metals contends that the claimants do not have a sufficient number of continuous service credits because termination of the agreement constituted a "break" and service credits no longer continued to accrue. The resolution of this dispute depends on the proper construction of the expired Pension and Disability Agreement and also on the proper method of calculating continuous service credits.
 
 
 23
 Therefore, this claim arises under the Pension and Disability Agreement and is based on differing interpretations of how to calculate the number of years of continuous service. We conclude that the district court was correct in holding that the pension dispute is arbitrable under the Supreme Court's reasoning in Nolde, even though the claimants had not accrued enough credits to be eligible at the time the agreement terminated.
 
 C.
 
 24
 Alternatively, Federated Metals contends that the dispute is not arbitrable because the Union did not assert the claims within a reasonable time. The district court found that the Union did not delay unreasonably in pursuing these claims. It recognized that these rights were not asserted until nine months after termination, but found this to be reasonable because the parties were not sure of their status until January 11, 1978.
 
 
 25
 Federated Metals argues that the "reasonable time" alluded to in Nolde has nothing to do with whether the Union delayed unreasonably, but merely refers to the actual time that has elapsed since the contract terminated. Although there may be some situations in which so much time has elapsed since the contract expired that to order arbitration would be unfair despite the fact that the union has not delayed unreasonably, we do not believe that this is such a case. In this case, as in United Steelworkers v. Fort Pitt Steel Casting, 635 F.2d 1071 (3d Cir. 1980), cert. denied --- U.S. ---, 101 S.Ct. 2319, 68 L.Ed.2d 843 (1981) (Fort Pitt II), the grievances arose while the unions were negotiating for a new agreement after the old agreement had expired. In cases such as these, we believe that the proper inquiry is whether the union delayed unreasonably in asserting the disputed claims. We agree with the district court that there was no unreasonable delay in asserting the pension claims.
 
 III.
 
 26
 The two disability claimants became disabled during the strike after the Pension and Disability Agreement had expired. The district court denied the Union's demand for arbitration, reasoning that Federated Metals did not dispute the number of years of continuous service, the age, or the cause of the disability of either of these employees. Therefore, the Union's grievance did not fall within one of the three categories of arbitrable issues under the Pension and Disability Agreement.
 
 
 27
 Although denying arbitration for the disability claimants may seem inconsistent with granting arbitration for the pension claimants, we believe that the decision of the district court should be affirmed. Federated Metals concedes that the disability claimants have the requisite years of continuous service, that they are of the requisite age, and that the cause of the disability was one covered under the agreement. The Union argues that it interprets the Pension and Disability Agreement as providing that an employee with a sufficient number of years deserves his or her disability benefits. Because the claimants have enough years, the Union characterizes Federated Metals' refusal to pay benefits as a "dispute over the effects of having a given number of years of service." However, even if we assume that this characterization of the dispute is plausible, it only demonstrates that the dispute arises under the Pension and Disability Agreement. It does not support the contention that the dispute is also over an arbitrable issue. A dispute over the effects of having a sufficient number of years of continuous service credit is not a dispute over the number of years, or the method of calculating those years, of credit. Therefore, we believe that this dispute can only be viewed as whether the substantive provisions for disability benefits survive contract termination. This is not one of the disputes included in the arbitration clause.
 
 IV.
 
 28
 We conclude that the pension dispute is over the number of years of continuous service, which is arbitrable under the arbitration clause of the Pension and Disability Agreement. We also find that the arbitration clause survives termination of that agreement, and that the Union did not delay unreasonably in asserting the pension claims. Further, we conclude that the disability dispute is not over one of the issues covered by the arbitration clause.
 
 V.
 
 29
 The orders of the district court will be affirmed.
 
 
 30
 ROSENN, Circuit Judge, concurring.
 
 
 31
 For the reasons set forth in part III of my dissenting opinion in United Steelworkers of America v. American Smelting and Refining Co., 648 F.2d 863 (3d Cir. 1981), decided this same day, I do not join in that portion of the majority's opinion which purports to hold that "there is nothing to prohibit the parties from agreeing that certain benefits might accrue after the contract has expired." Maj. op., supra at 861. However, because the merits of the underlying disputes are not properly before us, United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960), the objectionable statement has no bearing on our disposition of this case. I therefore concur in the result reached by the majority and in so much of its reasoning as is consistent with part III of my dissent in the companion case.
 
 
 
 [1]
 The pension and disability claims are based on three documents: the Pension and Disability Agreement referred to in text; the ASARCO Retirement Income Plan (Retirement Plan); and the ASARCO Plan for Permanent and Total Disability Benefits (Disability Plan). The Retirement Plan and the Disability Plan were applicable to ASARCO employees throughout the United States. Part I of the Retirement Plan and the entire Disability Plan were applicable to the employees at the Perth Amboy plant. The Pension and Disability Agreement contained amendments to and variations from the multi-plant Retirement and Disability Plans, for which the Union and ASARCO had collectively bargained
 
 
 [2]
 Article I, Section 2(b) of the Pension and Disability Agreement provides:
 (b) Early Retirement
 70/80 Formula. Any Employee who is laid off due to the permanent shutdown of the total Plant at which he or she is employed and which is covered under the Agreement may elect to retire and receive a ' 70/80' retirement benefit, provided such employee:
 (1) has reached age 55 and attained age plus Continuous Service totals 70 years or more, or
 (2) has not reached age 55 and attained age plus Continuous Service totals 80 years or more.
 
 
 [3]
 The Retirement Plan provides:
 The Pension Board shall establish rules and regulations for the administration of the Plan and, except as otherwise expressly provided in the Plan, the interpretation of the Plan and determination of any question as to the eligibility for or amount of benefits and months of Continuous Service of an Employee or any question whatsoever arising in connection therewith, shall rest entirely with the Pension Board.
 
 
 [4]
 The Disability Plan provides:
 (ASARCO), as administrator of the Plan, shall be solely responsible for the establishment of such rules and regulations as may be required for the operation and administration of the Disability Plan.
 In determining the eligibility of any employee, as to the length and continuity of his service, the existence of permanent and total disability, and any other application of the Plan, the decision of the Company shall be final, consistent with any existing agreements with representatives of employees.
 
 
 [5]
 Article III, Section 1 of the Pension and Disability Agreement provides:
 Section 1. Appeals procedure. If any difference shall arise between any employee and the Company as to:
 (a) the number of years of continuous service of an employee;
 (b) the age of such employee; or
 (c) whether permanent and total disability did or did not result from the cause listed ,
 the question may be submitted by either party for arbitration to the American Arbitration Association.