UNITED RUBBER, CORK, LINOLEUM AND PLASTIC WORKERS OF AMERICA LOCAL UNION 184, Thomas J. Walsh, Thomas J. Ciconte, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

ELECTRIC HOSE AND RUBBER COMPANY, Subsidiary of Dayco Corporation, a Delaware corporation, and Dayco Corporation, a Delaware corporation, Defendants.

Civ. A. No. 79–414.

United States District Court, D. Delaware.

Aug. 28, 1981.

Paul H. Spiller, Kimmel & Spiller, Wilmington, Del., for plaintiffs.

R. Franklin Balotti and Richard D. Kirk, Richards, Layton & Finger, Wilmington, Del., for defendants.

OPINION

MURRAY M. SCHWARTZ, District Judge.

This is an action for declaratory judgment that defendant employer is obligated to provide a Blue Cross/Blue Shield medical insurance program allegedly required by a collective bargaining agreement rather than similar private insurance coverage. In the alternative, plaintiff requested an order requiring arbitration of the issue in accordance with the grievance procedure of the collective bargaining agreement. This Court possesses jurisdiction of this labor dispute under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. Today's decision is limited to the issue of arbitration. Finding that entitlement to a Blue Cross/Blue Shield program is an arbitrable issue under the collective bargaining agreement, the Court will grant plaintiff's motion. This Opinion constitutes the Court's Findings of Fact and Conclusions of Law required by Federal Rule of Civil Procedure 52.

*THE FACTS*

On September 18, 1976, Electric Hose & Rubber Co. entered into a collective bargaining agreement with Local 184 of the United Rubber, Cork, Linoleum and Plastic Workers of America ("Local 184"). At the same time, the same parties adopted a Health and Welfare Agreement. Both agreements contain provision for grievance

of contract disputes and arbitration of the same.[1] The parties concur that the agreements survived beyond September, 1978, although defendants' Wilmington facility, for which the Local's members worked, was permanently closed in September, 1977.[2]

In May, 1978, Electric Hose & Rubber Co. merged with Delday, a subsidiary of Dayco Corporation ("Dayco"). Electric Hose & Rubber Co. assumed all of the obligations of its predecessor corporation. (Doc. No. 22, Answer to Plaintiffs' Interrogatory No. 8). Both the new corporation, which took the name Electric Hose & Rubber Co. ("EH&R"), and Dayco are defendants in this action, although the instant motion seeks judgment only against EH&R.

On January 19, 1979, Dayco notified Wilmington employees and retirees that their health benefits program would be replaced by Dayco's own program. The change went into effect on February 1, 1979. On that date, Local 184 filed a grievance objecting to the unilateral action. On February 20, 1979, the grievance was followed up by a request for arbitration. It has been stipulated that the requests were in accordance with the agreements and were duly received by EH&R (Stipulation to Supplement Record, Doc. No. 39). The record reflects no responsive action by EH&R.

The Local now claims that unilateral substitution of a new health care plan resulted in a change in the health care agreement which breaches their contract. Section 1.2 of the contract provides, "that no change may be made herein without the consent of the parties." (Doc. No. 30, Exh. A at 3). Section 4 of the Health and Welfare Agreements binds EH&R to supply "without cost to employees"

A semi-private extended benefits hospitalization plan with prevailing fee surgical-medical coverage for employees and dependents. The composite group rate as established by Blue Cross will be shared 50–50 by the Company and early and disability retirees until Medicare becomes available to the retiree, at which time coverage under Blue Cross-Blue Shield will terminate.

(Doc. No. 30, Exh. B at 51–52).

Initially plaintiff sought summary judgment including a declaration that EH&R is obligated to provide Blue Cross-Blue Shield coverage and damages for diminution of benefits by reason of the substitution of plans. During the briefing and argument of that motion, it became apparent that the Local's more pressing claim was the declaration that they are entitled to arbitration of the breach of contract issues. Arbitrability was then briefed and argued. It is the sole concern of this opinion.

*ARBITRABILITY*

The questions for decision are 1) whether the arbitration provisions of the agreements permit resolution of the insurance issue by an arbitrator and 2) whether section 4 of the Health and Welfare Agreement quoted above confers an entitlement to the Blue Cross-Blue Shield program sufficient to invoke the contractual duty to arbitrate when such benefits were changed. In answering these questions affirmatively, this Court does not decide that a Blue Cross-Blue Shield plan is mandated by the provision, but that it is *arguably* mandated. The language being susceptible of such an interpretation, plaintiff has a legitimate, though not unanswerable, claim under the contract

1. Both agreements appear in the record as Exhibits to Defendants' Request to Plaintiffs for Admissions. (Doc. No. 30). Articles 14 & 15 of the Collective Bargaining Agreement describe the procedure for grieving disputes "as to the meaning and application of this contract" and subsequent arbitration. (Doc. No. 30, Exh. A at 36). These procedures are extended to differences respecting "the meaning and applications" of the health plan. (Health and Welfare Agreement, Doc. No. 30, Exh. B at 58). The accuracy of these documents was

admitted by plaintiffs. Doc. No. 32. The Health and Welfare Agreement appears to form part of the total contract. *See* Collective Bargaining Agreement's Table of Contents (Exh. A at 2).

2. Both agreements were to terminate September 15, 1978. They contain provisions, however, for automatic renewal for one-year periods unless either party gives written notice of termination. (Doc. No. 30, Exh. A at 48, Exh. B at 58). No such notices were sent.

that is appropriate for consideration by the arbitrator.

■ Both Congress and the federal courts maintain a firm policy favoring arbitration of labor disputes. *See, e.g., Nolde Brothers v. Local 358, Bakers & Confectionary Workers Union*, 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 566, 80 S.Ct. 1343, 1345, 4 L.Ed.2d 1403 (1960) (quoting 29 U.S.C. § 173(d): "Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of disputes arising over the application or interpretation of an existing collective-bargaining agreement."). The extent of arbitrability is governed by the contract between labor and management; they may narrow the scope for arbitration as much as they choose. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *Federated Metals Corp. v. United Steelworkers of America*, 648 F.2d 856 (3d Cir. 1981). However, once the contracting parties have provided for arbitration, a presumption of arbitrability arises. The presumption requires arbitration of disputes arising under the contract "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf, supra*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53; *Federated Metals, supra*. This presumption applies even in cases, like this one, where the plant employing the disputing workers has been closed. *United Steelworkers of America v. Fort Pitt Steel Casting Division—Conval-Penn, Inc.*, 635 F.2d 1071 (3d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 2319, 68 L.Ed.2d 843 (1981).[3]

■ The arbitration provisions applicable to the instant dispute are very broad indeed. Article 15 of the Collective Bargaining Agreement exempts from required arbitration only questions of "general wage increase, renewal or extension of this agreement." (Doc. No. 30, Exh. A at 40). A special section of the Health and Welfare Agreement provides for arbitration of "the meaning and application of the provisions of the plan." (Doc. No. 30, Exh. B at 58). It is apparent that this dispute over the provision of the plan allegedly promising Blue Cross-Blue Shield coverage cannot be held clearly excluded from arbitration; the contrary is true. Therefore the presumption of arbitrability applies.

EH&R believes that the presumption of arbitrability is overcome by what it perceives as the weakness of the underlying substantive claim. It argues that plaintiff has no claim under the contract because the contractual health provision mandates not Blue Cross-Blue Shield coverage, but a plan with certain kinds of benefits that might be supplied by any insurer.

■ Defendant is correct in stating that the Court has the duty to determine "whether the party seeking arbitration is making a claim which on its face is governed by the contract." *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). This Court cannot agree, however, that section 4 of the Health and Welfare Agreement is so plain that the Union's agreement cannot be said to state a claim under it. That section mandates "a semi-private extended benefits hospitalization plan with prevailing-fee surgical-medical coverage for employees and dependents." On its face, this phrase establishes that the issue of precisely what plan meets the stated criteria arises under the contract. Moreover, section 4 goes on to describe the required coverage in terms of Blue Cross and Blue Shield plans. In light of this supplementary language, it cannot be said

---

**3.** *Fort Pitt* fully answers EH&R's contention that the policy favoring settlement of labor disputes by arbitration loses its force when a plant is closed and therefore not endangered by the violence and strikes that may threaten interstate commerce. The Third Circuit Court of Appeals found that plant closure did not terminate the interests of employees in obtaining the inexpensive, prompt and expert treatment afforded by the favored arbitration process. *Fort Pitt, supra*, 635 F.2d at 1075, *quoting Nolde, supra*, 430 U.S. at 254, 97 S.Ct. at 1073.

that plaintiff has made a frivolous claim in urging that the contract could be interpreted to reflect a bargain for Blue Cross-Blue Shield coverage and not a different plan. Rather, it appears that the question is one relating to "the meaning and application of the provisions of the plan," and, so, subject to arbitration under the Disputes provision of the Health and Welfare Agreement. (Doc. No. 30, Exh. B at 51). EH&R has not met its "burden that the arbitration clause is not susceptible of an interpretation that covers this dispute." *United Steelworkers of America v. Canron, Inc.*, 580 F.2d 77, 82 (3d Cir. 1978). *Cf. Westinghouse Broadcasting v. Local 804*, 616 F.2d 97 (3d Cir. 1980).

During the first round of briefing in this case, the defendant presented several objections to entry of summary judgment for plaintiff on the primary issue of breach of the collective bargaining agreement. These included objections that retiree plaintiffs are not entitled to insurance coverage because they are not "employees" within the meaning of the Health and Welfare Agreement; that the class of plaintiffs represented by Local 184 is too vaguely defined and may be inappropriate; and that the alleged right to Blue Cross-Blue Shield coverage lapsed six months after closure of the Wilmington plant in September, 1977. These problems were understandably not pursued in briefing of the arbitrability issue. It is sufficient to note that they concern matters of contract interpretation and of definition of the individual union members who may benefit from or lose by the arbitrator's chosen interpretation. These issues are appropriate for resolution by arbitration along with the central problem of hospitalization benefits. *Cf. John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Controlled Sanitation Corp. v. District 128*, 524 F.2d 1324 (3d Cir. 1975), *cert. denied*, 424 U.S. 915, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976).

The question of arbitrability has been resolved as a matter of law on the basis of admittedly accurate copies of the relevant contract provisions. There being no outstanding material issues of fact, the Court will enter summary judgment for plaintiffs under Federal Rule of Civil Procedure 56.

*ATTORNEY'S FEES*

In conjunction with this motion, Local 184 also requests that it be awarded attorney's fees on the ground that defendant's failure to arbitrate the contract dispute was an act of bad faith. The evidentiary record contains nothing regarding the circumstances of defendant's refusal to arbitrate. Indeed, plaintiff's counsel did not pursue the arbitration question until the very end of briefing on the original motion for summary judgment. In view of the utter absence of record support, this Court does not find that defendant acted in bad faith. Consequently, plaintiff's motion will be denied as to attorney's fees.

An order will be entered granting plaintiff's motion for summary judgment on the issue of arbitrability, requiring defendant EH&R to submit to arbitration in accordance with Article 15 of the collective bargaining agreement and denying plaintiff's motion for summary judgment of its entitlement to attorney's fees.