# United States Court of Appeals

## For the First Circuit

No. 06-2694

SLEEPER FARMS; VAUGHN SLEEPER; and MARY SLEEPER,

Plaintiffs, Appellants,

v.

AGWAY, INC., RICHARD SIROIS,
TODD BRADLEY, and CARL SMITH,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya, Senior Circuit Judge,
and Schwarzer,[*] Senior District Judge.

Nicholas J.K. Mahoney for appellants.
Frederick J. Badger, Jr. with whom Richardson, Whitman, Large and Badger was on brief for appellees.

November 2, 2007

---

[*]Of the Northern District of California, sitting by designation.

**BOUDIN, <u>Chief Judge</u>.**  This case concerns dealings by Agway Inc., an agricultural cooperative, with Vaughn and Mary Sleeper.  The Sleepers grew seed potatoes on their farm (Sleeper Farms) in Sherman Mills, Maine, and claim that Agway owes them money for potatoes harvested between 1998 and 2001.  The parties have now litigated before a bankruptcy court, an arbitrator, and the federal district court twice; Agway has gone bankrupt; the Sleepers are no longer growing potatoes.

Between 1998 and 2001 (three growing seasons), Agway purchased seed potatoes from Sleeper Farms; Agway would then re-sell the crop to other farmers for new plantings.  In June 2000, Agway withheld some $51,000 of payment, saying that the Sleepers had mixed genetically altered potatoes with unaltered potatoes in a shipment.  The parties corresponded about the withheld sum but reached no agreement; the Sleepers threatened to sue; Agway then filed a demand for arbitration with the American Arbitration Association ("AAA"), which the AAA accepted.

On February 21, 2002, the Sleepers filed a complaint in the federal district court in Maine against Agway and several individuals associated with that company.  The complaint included multiple common law causes of action and also alleged violations of various state and federal statutes; it challenged, in addition to the earlier withholding, other alleged unfair practices by Agway-- unilateral cutting of prices, refusal to accept quantities

-2-

previously ordered, and so on.  The Sleepers moved to enjoin the arbitration, and Agway moved to dismiss or stay court proceedings pending arbitration.  See 9 U.S.C. § 3 (2000).

The district court held an evidentiary hearing on May 15, 2002, after which it denied the motion to enjoin arbitration and instead ordered a stay of judicial proceedings pending arbitration.  The court determined that Sleeper Farms assented to a series of purchase orders, which incorporated by reference Agway's standard sales contract, which in turn included an arbitration clause.  None of the Sleepers' objections to arbitrability was accepted.

The district judge did not reach the question of scope, i.e. which of the Sleepers' claims fell within the arbitration clause; that is generally a question for the judge to decide, AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 650-51 (1986), but here he found a "clear and unmistakable" delegation of that power to the arbitrator[1] and told the arbitrator to decide the scope of the clause and the merits of the claims that were within the scope.  We do not have jurisdiction over interlocutory orders that stay proceedings pending arbitration, 9 U.S.C. § 16(b)(1), and

---

[1]The arbitration clause referenced the AAA's procedural rules, one of which permits the arbitrator to rule on such questions of scope.  The Sleepers do not challenge this finding by the district judge, and so we need not consider whether such a reference meets the "clear and unmistakable" standard.  See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003) (plurality opinion).

-3-

the Sleepers voluntarily dismissed without prejudice the appeal that they filed after the order was issued.

Shortly after the district court's order, Agway filed for bankruptcy and proceedings slowed; but eventually the bankruptcy court permitted the arbitration to go ahead.  In May 2005, the parties signed an additional stipulation, filed with the AAA, that "all issues of liability and damages contained within Sleeper Farm's Complaint . . . shall be determined through arbitration in this forum."  The implications of this stipulation are disputed.

On the merits, in an award issued on December 16, 2005, the arbitrator awarded some \$82,000 (plus costs) to Sleeper Farms. He found that Agway's withholding of payment in June 2000 had been improper, but rejected most of the Sleepers' other claims.  Not satisfied with this limited victory, the Sleepers returned to the district court and moved to vacate the award.[2]  Agway moved to confirm it.  Finding neither fraud nor manifest disregard of law, the court upheld the arbitrator's award.

On appeal, the Sleepers challenge both of the district judge's orders: the 2002 order referring the dispute to the arbitrator, and the 2006 order confirming the arbitrator's award. The former was not appealable on an interlocutory basis, but as

---

[2]There was some debate over whether the bankruptcy court or the district court was the proper forum for the post-arbitration motions, but the bankruptcy court noted that the district court proceedings had only been stayed, not dismissed, and therefore directed the parties to return there.

with non-final orders generally, it can be challenged along with the final judgment. <u>Tejidos de Coamo, Inc.</u> v. <u>Int'l Ladies' Garment Workers' Union</u>, 22 F.3d 8, 11 (1st Cir. 1994). We first consider the challenges to the initial order.

As a threshold matter, Agway points out that the stipulation stated that the Sleepers agreed to have "all issues of liability and damages" resolved through arbitration. It argues that none of the objections to the July 2002 order matter anymore, claiming the stipulation signed by the parties provided an independent basis for the arbitrator's authority. Indeed, as Agway reads the stipulation, the Sleepers abandoned their original objection to the reference.

Agway's position is arguable, but we think that the more reasonable reading of the stipulation favors the Sleepers. At the arbitration, the parties could have continued to argue about which of the numerous claims made by the Sleepers fell within the arbitration clause--the scope question having been explicitly referred to the arbitrator by the district court. But the claims were intertwined and overlapping and it was efficient for the parties to agree to treat the whole group as within the scope.

The Sleepers' objections to sending the case to the arbitrator and the manner of its sending were of a different order. Those objections involved not the scope of the clause but whether Agway could invoke the arbitration clause at all and whether the

-5-

reference by the district court properly allowed the arbitrator to consider other, non-scope objections. The Sleepers had reason to preserve such claims for eventual appeal and no obvious motive for abandoning them.

Although the stipulation would have been clearer with an express reservation as to these non-scope objections, the Sleepers did not waive them. We therefore consider the claims, the district court's legal conclusions being open to de novo review. Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 9 (1st Cir. 2005). As it turns out, our interpretation of the stipulation does not affect the result: the district court rightly sent the case to the arbitrator and the terms of the reference did not foreclose any of the Sleepers' legitimate objections.

In the district court the Sleepers objected to any reference--saying that they had never agreed to arbitrate and, in the alternative, that the arbitration clause was unenforceable on various grounds. Claims of the former class--for example, that they had never agreed to any arbitration clause--were for the district court. AT&T Techs., 475 U.S. at 648-49. But the district court resolved claims of this type against the Sleepers and they are not pursued on this appeal.

By contrast, various claims of unenforceability were made but on appeal the Sleepers press only two: that the contracts were illegal (or "void ab initio" as they put it) and that Agway waived

its right to arbitrate. Correctly, the Sleepers assume that such claims were properly for the arbitrator; their objection here is that the wording of the district court's reference to the arbitrator did not allow the arbitrator to address those claims.

Indeed, the reference did not refer such claims to the arbitrator as objections to arbitration. The district judge told the arbitrator to determine (i) the scope of the arbitration clause and (ii) the merits of whichever of the Sleepers' federal claims fell within the clause's scope. But the district court was correct in thus framing the issues. The illegality and waiver arguments present different problems and we address them in that order.

The Sleepers' "void ab initio" argument goes to the validity of the substantive provisions of the contract, not to arbitrability. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-446 (2006). As a matter of federal law, the arbitration clause is unaffected even if the substance of the contract is otherwise void or voidable. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). Without this rule, the merits of a contractual dispute would often have to be adjudicated in court in order to determine whether the dispute is arbitrable.

If the contract was illegal or if Agway's alleged breach excused promised performance by the Sleepers, the Sleepers might then win the arbitration on the merits. But illegality or breach are simply merits issues that affect what performance is due from

-7-

each side and what remedies should be ordered.  Here, the void ab initio claim <u>was</u> referred to the arbitrator when the court directed that the arbitrator rule on "the merits of the issues"; and the arbitrator did consider the validity of the contracts under Maine law.

By contrast, a claim of waiver <u>may</u> be a genuine challenge to arbitrability.  <u>See</u> <u>Menorah Ins. Co.</u> v. <u>INX Reins. Corp.</u>, 72 F.3d 218, 221-22 (1st Cir. 1995).  But where a party challenges only "procedural" arbitrability, the court under recently consolidated Supreme Court doctrine is to defer to the arbitrator--for example, as to whether contractual time limits have been adhered to, <u>Howsam</u> v. <u>Dean Witter Reynolds, Inc.</u>, 537 U.S. 79, 84-85 (2002), or prerequisites (such as internal grievance procedures) have been met, <u>John Wiley & Sons, Inc.</u> v. <u>Livingston</u>, 376 U.S. 543, 557 (1964), or laches or estoppel have barred the invocation of arbitral rights, <u>Moses H. Cone Memorial Hosp.</u> v. <u>Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983).

Waiver claims fall into this category of threshold issues for the arbitrator, <u>Howsam</u>, 537 U.S. at 84; <u>cf.</u> <u>Marie</u>, 402 F.3d at 14 (exception for waiver claims based on litigation activity), and the Sleepers are correct that the district court did not instruct the arbitrator to make that threshold determination.  But a closer examination of their original "waiver" argument before the district

-8-

court reveals that, even if sufficiently presented to avoid forfeiture,[3] it did not state a genuine challenge to arbitrability.

Essentially, the waiver claim reflects the Sleepers' position that Agway unilaterally withheld payment due by contract; that such withholding constituted a breach of contract; further, that Agway breached the arbitration clause by taking that self-help measure rather than immediately invoking arbitration to resolve the dispute; and that the breach or the self-help or both constituted implicit waivers of Agway's right to arbitrate now.

But, as already noted, breach of the substantive contract is not a permitted objection to arbitrability; it is a merits question, one that the arbitrator considered and based on which even awarded damages to the Sleepers. Cf. Prima Paint, 388 U.S. at 404. To the extent that the Sleepers claim that Agway breached the arbitration clause by resorting to self-help, that is (at least in form) a procedural arbitrability argument--but one that is utterly empty: nothing in the agreement or incorporated AAA arbitration

---

[3]The Sleepers' response to Agway's motion to stay the proceedings did make a waiver argument, but it was hidden within a subsection that purports to argue that "Agway's Own Conduct Reveals That The Parties Never Intended To Make the 'Agway Sales Contract' A Basis of their Bargain." The two arguments were conflated throughout, likely contributing to the confusion surrounding the argument and who was to decide it. In their reply brief, the Sleepers now characterize their argument as an "issue of Laches or Estoppel," but the Sleepers did not argue laches or estoppel to the district judge or even in their opening brief in this court, which alone forfeits that claim. Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 10 (1st Cir. 2001).

rules suggests that engaging in self-help waives arbitration rights.[4]

The Sleepers might still insist that because this version of their waiver claim was in form a procedural arbitrability objection (albeit one that lacked merit), they were entitled to have the arbitrator rule on it in the first instance. Arguably, a claim so lacking in merit might not need to be referred to arbitration, cf. Bell v. Hood, 327 U.S. 678, 682-83 (1946); but in any event this waiver claim was not clearly preserved (note 3, above); and, if it had been referred, the arbitrator would have had to reject it on the merits.

We turn now to the Sleepers' second group of arguments, directed to whether the arbitration award should be vacated. Our review is "exceedingly narrow," In re Vital Basics Inc., 472 F.3d 12, 16 (1st Cir. 2006), and "tightly circumscribed." Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006). A district court may set aside an award only on limited grounds.[5] We

---

[4]Indeed, before the Supreme Court clarified that procedural arbitrability objections should go to the arbitrator, Howsam, 537 U.S. at 84-85, courts routinely rejected "waiver" arguments of this sort. See Local Union No. 721, United Packinghouse v. Needham Packing Co., 376 U.S. 247, 251-53 (1964); Welborn Clinic v. Medquist, Inc., 301 F.3d 634, 637 (7th Cir. 2002); Morrie Mages & Shirlee Mages Found. v. Thrifty Corp., 916 F.2d 402, 404 (7th Cir. 1990); Southwest Indus. Imp. & Exp., Inc. v. Wilmod Co., 524 F.2d 468, 469-70 (5th Cir. 1975).

[5]The Federal Arbitration Act enumerates specific grounds for which an award can be vacated by the district court, 9 U.S.C. § 10(a), and there are limited extra-statutory grounds that could

review the district court for clear error on factual findings and _de novo_ as to legal conclusions. <u>First Options of Chicago, Inc.</u> v. <u>Kaplan</u>, 514 U.S. 938, 947-49 (1995).

Of the two grounds put forward by the Sleepers for vacating the award, we need only consider one. In their brief, they assert that the arbitrator acted "in manifest disregard of the law," <u>cf.</u> <u>Prudential-Bache Secs., Inc.</u> v. <u>Tanner</u>, 72 F.3d 234, 240 (1st Cir. 1995), but do not actually make any arguments to support that claim. Instead, they purport to "incorporate[] by reference" their motion before the district court. That is not acceptable: this court will only consider arguments made before this court; everything else is deemed forfeited. <u>United States</u> v. <u>Beltran</u>, --- F.3d ---, 2007 U.S. App. LEXIS 22054, at *4 (1st Cir. Sep. 14 2007).

Next, the Sleepers attempt to tar the arbitral award as contrary to public policy--particularly, the policy reflected in the Maine Potato Licensing Act, 7 M.R.S.A. § 1022 (2007). Since the statute is designed (they say) to "protect the potato farmer from the placing of oral planting orders," the Sleepers argue that the arbitrator should not have invoked the statute of frauds to bar any of their claims.

---

also merit vacatur. <u>Advest, Inc.</u> v. <u>McCarthy</u>, 914 F.2d 6, 8 (1st Cir. 1990).

Their theory seems to be that if (as they allege) oral contracts were made despite the statutory requirement of a detailed written record, those contracts should be enforced against the purchasers as a form of penalty notwithstanding the general doctrine that voids such agreements.  But a contract can only be enforced if it exists--and the arbitrator found that there were no such oral contracts between Agway and the Sleepers; he invoked the statute of frauds only as an alternative ground of decision.

Even if the Sleepers' argument rested on a sound premise, legal mistakes by the arbitrator are not automatically subject to correction on judicial review, United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987), even when they are alleged to touch on public policy.  W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, 461 U.S. 757, 766 (1983) (describing exceptions).  Since the premise fails, we need not fine tune the limits on reviewability.

Affirmed.