**UNITED STATES of America for the Use and Benefit of COASTAL ROOFING COMPANY, INC., Plaintiff,**

v.

**P. BROWNE & ASSOCIATES, INC., Paul R. Browne, Fred Anthony The Broadband Companies and Hartford Fire Insurance Company, Defendant.**

**C.A. No. 2:07–3008–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

Dec. 5, 2007.

Stanley Eugene Barnett, Walter Henry Bundy, Jr., Smith Bundy Bybee And Barnett, Mt. Pleasant, SC, for Plaintiff.

Dwayne M. Green, Hampton Green Law Firm, Anthony Bryan O'Neill, Sr., O'Neill and Fair, Charleston, SC, Eric A. Frechtel, Robert James Symon, Bradley Arant Rose and White, Washington, DC, Nicholas James Voelker, Bradley Arant Rose and White, Charlotte, NC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on Defendants' Motion to Dismiss the action for lack of subject matter pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, to stay this matter pending the outcome of arbitration under the Federal Arbitration Act.[1] The Plaintiff has filed a Memorandum in Opposition to Defendants' Motion. For the reasons set forth herein, Defendants' Motion to Dismiss is denied, but Defendants' Motion to stay this matter is granted.

1. 9 U.S.C. § 1 *et seq.* (2006).

## BACKGROUND

Plaintiff Coastal Roofing Company, Inc. ("Coastal") is in the business of installing and repairing roofs. In the summer of 2006, Coastal President Richard Ryan ("Ryan") began negotiating with representatives of a company called Broadband Construction, LLC ("Broadband"). Defendants Paul Browne & Associates and Paul Browne (collectively, "Browne"), had been given a contract to perform roofing work at the United States Navy's SPA-WAR facility at the Charleston Weapons Station. Browne had then subcontracted this work to Broadband. Broadband, in turn, was in negotiations to subcontract the work to Coastal. Representing Broadband was Donald T. Reynolds ("Reynolds"), who held himself out to be President of Broadband.

In August 2006, contract negotiations concluded. On August 11, Reynolds signed the contract on behalf of Broadband, and Ryan signed on behalf of Coastal. The contract contained the terms under which Coastal would perform the actual roofing work in question. The contract contained an arbitration provision, which reads:

Dispute Resolution: Unless by mutual agreement of the parties, all claims, disputes, and matters arising out of or relating to this Agreement or breach thereof shall first be submitted to mediation through the American Arbitration Association and if not resolved by mediation shall be decided by arbitration in accordance with the most current Construction Industry Arbitration Rules of the American Arbitration Association. The mediation and/or arbitration shall not be stayed pending resolution of any claims or disputes between the Contractor and the Owner or other third parties. Any disputes shall be governed by

the law of the state where the project is located and the federal or state courts in the state where the project is located shall have exclusive jurisdiction and venue. Any arbitration shall be conducted within the state where the project is located. Should either party employ an attorney to institute litigation or arbitration to enforce any provision of this contract or to collect damages or debt under this contract, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs and expenses incurred. In the event of arbitration, the arbitrator shall award attorney's fees to the prevailing party.

(Defs.' Ex. 2 at 4–5.)

On February 21, 2007, Broadband's attorney sent a letter to Coastal informing them that their employment had been terminated due to insufficient progress on the job. At this point, Reynolds, again holding himself out to be President of Broadband, entered into a separate contract with another subcontractor, Glasgow Roofing Company, Inc. ("Glasgow"), to complete the roofing work for which Coastal had been hired.

In April 2007, Coastal notified Broadband's counsel that it would demand arbitration for breach of contract over its termination. While conducting research for the arbitration, Coastal discovered that Broadband Construction, LLC, did not in fact exist as a limited liability corporation. After bringing this issue up to Broadband's attorney, the attorney responded that the actual contracting party had been Broadband Construction Services, LLC. However, upon conducting research, Coastal discovered that Broadband Construction Services, LLC had actually been dissolved with the Secretary of State on December 31, 2006. Despite this, Reynolds continued to do business as Broad-

band, particularly with Glasgow, well after this date.

On June 26, 2007, the parties met for mediation of this dispute, but were unable to resolve their differences. The mediator suggested that the two parties document their differences, submit them to him, and return for mediation on September 12. On September 5, Coastal sent a letter to Broadband's attorney informing him that Coastal would not be attending any further mediation. Also on September 5, Coastal filed the present action against Defendants in this court.

In its Complaint, Plaintiff alleges five separate causes of action: (1) a violation of the Miller Act,[2] which requires contractors on federal construction contracts to obtain a surety bond; (2) a legal claim for *quantum meruit*, or the legal value of services rendered; (3) fraud; (4) civil conspiracy; and (5) a request for a declaratory judgment that no contract was formed between Plaintiff and Broadband or any Defendants. Plaintiff is seeking compensatory damages in the amount of services rendered for its roofing services, punitive damages, attorneys' fees, and a declaration that both the surety bond obtained by Plaintiff and the agreement between Coastal and Broadband are null and void.

On October 9, 2007, Defendants Anthony and Broadband moved to dismiss the Plaintiff's Complaint, or, in the alternative, for the court to stay the current action pending the outcome of arbitration. On October 19, Defendant Browne moved to dismiss, or, in the alternative, to stay pending the outcome of arbitration on the same grounds. Plaintiff responded in opposition to these motions on October 26. On November 1, Defendants Anthony and Broadband filed a Reply to Plaintiff's Memorandum in Opposition.

**2.** 40 U.S.C. §§ 3131 to 3134 (2006).

## ANALYSIS

■■■ The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir.2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The Fourth Circuit has said that arbitration " 'should not be denied unless it may be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute.' " *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir.1989) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

■■■ The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3 (2006). "This stay-of-litigation provision is mandatory." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir.2002). "A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001)).

■■■ In the Fourth Circuit, arbitration is appropriate under the FAA if a litigant can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991). In this matter, Plaintiff contests the second element, denying the existence of a binding contract to arbitrate this dispute.

■■■ "Arbitration is available only when the parties involved contractually agreed to arbitrate." *Towles v. United Health-Care Corp.*, 338 S.C. 29, 37, 524 S.E.2d 839, 844 (Ct.App.1999). Plaintiff argues that since there was, in actuality, no such entity as "Broadband Construction, LLC," that the entire contract in question, and consequently the arbitration clause, was invalid. (Pl.'s Mem. in Opp'n at 4–10.)

■■■ However, defendant argues that the doctrine of severability requires that these issues first be presented to an arbitrator before they can be heard by this court. (Defs.' Mot. to Dismiss at 5–6.) Recently, the United States Supreme Court heard a case involving a contract that contained an arbitration provision, and decided that unless the party opposed to arbitration was specifically challenging the arbitration provision itself, and not the entire contract, the matter should be heard by an arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The *Buckeye* court wrote that:

> *Prima Paint* and *Southland* answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, *unless the challenge is to the arbitration*

*clause itself, the issue of the contract's validity is considered by an arbitrator in the first instance.* Third, this arbitration law applies in state as well as federal courts. The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, we conclude that *because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court.*

*Id.* at 445–46, 126 S.Ct. 1204 (citations omitted) (emphasis added).

The need for the rule announced in *Buckeye* is quite apparent. If this were not the rule, the law in this area would find itself in the situation of the proverbial tail wagging the dog. Certainly contracting parties such as the parties in this case, who entered an agreement to refer "all claims, disputes, and matters arising out of or relating to this Agreement" to an arbitrator, intended this definition to include issues of contractual validity. However, if the court were to accept the Plaintiff's proposed application of the law, then any party who disputed the validity of the contract and was opposed to arbitration could file their case in a court of law. The court of law would then have to decide whether the entire contract is valid simply in order to determine whether the arbitration clause is valid such that the case may be submitted to arbitration. Obviously, however, at this point *res judicata* would ren-

der any action taken by an arbitrator superfluous and irrelevant, and thus defeat the entire purpose of the arbitration clause, since the court of law would have already decided the larger substantive issue of contractual validity.

The law under the FAA and *Buckeye,* therefore, mandates a different result. In the wake of *Buckeye,* courts have ruled that challenges to the entire contract, such as this one, are subject to arbitration.[3] *See, e.g., Sleeper Farms v. Agway, Inc.,* 506 F.3d 98, 102–03 (1st Cir.2007) (holding that the issue of whether contract which contained arbitration agreement was illegal should be properly decided by arbitrator, not court); *Community State Bank v. Strong,* 485 F.3d 597, 622 (11th Cir.2007) ("Thus, even a party's claim that a usurious finance charge renders the contract as a whole void *ab initio* is for the arbitrator, not the court, to decide, and is no defense to a motion to compel arbitration."); *Lucey v. FedEx Ground Package Sys., Inc.,* 2007 WL 3052997 at *4 n. 6 (D.N.J. Oct. 18, 2007) (holding that where a contract containing an arbitration clause is challenged as unconscionable, "those disputes should first be resolved by an arbitrator.").

In the present case, Plaintiff has not presented any evidence that the arbitration agreement was specifically invalid, or that Plaintiff did not agree to have any disputes related to the agreement arbitrated. Plaintiff's sole ground for disputing the agreement's validity is the allegation that the other contracting party was a nonexistent legal entity. This is precisely

---

**3.** Many of these cases explicitly refute Plaintiff's claim that the doctrine of severability "applies only to assertions by a party that an otherwise properly formed contract is voidable through application of principles such as fraud in the inducement." (Pl.'s Mem. in Opp'n at 3.) In the *Sleeper Farms* case, the First Circuit applied the doctrine of severability to a claim that the contract was ille-

gal, which would make a contract void *ab initio,* not voidable. In the *Strong* case, the Eleventh Circuit applied the doctrine of severability to a claim that the contract was unconscionable, and therefore void *ab initio.* However, even if these cases did not refute this claim, Plaintiff has cited no authority, and provided no legal rationale, for making such a distinction.

the type of issue that these parties intended to be decided by a mediation or an arbitrator.

Accordingly, the court finds that it lacks subject matter jurisdiction over the issue of whether or not the agreement between Plaintiff and Broadband was a legally binding contract, and this matter should be decided through arbitration as specified in the agreement's arbitration clause.

Plaintiff also claims that arbitration would be inappropriate in this case because all Defendants lack standing to enforce the arbitration agreement, given that none of the Defendants were parties to the contract. (Pl.'s Mem. in Opp'n at 10.)

In certain circumstances, however, a nonparty to an arbitration agreement can enforce, or be bound by, an arbitration provision within a contract executed by other parties so long as it is the "appropriate case," or certain exceptions apply. *See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir.2000) ("Well-established common law principles dictate that in an appropriate case a non-signatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties."); *Britton v. Co–op Banking Group*, 4 F.3d 742, 744 (9th Cir.1993) (recognizing that generally a nonparty to an arbitration agreement does not have standing to invoke the agreement, but considering whether the nonparty could force arbitration because it was a third party beneficiary of the contract, a successor in interest to the contracting party, or an agent of the contracting party); *Thomson–CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 776 (2d Cir.1995) (noting numerous common law agency and contract principles under which nonparties to arbitration clauses may be bound to arbitration agreements of others).

Generally, this issue arises when a signatory to a contract attempts to force a nonsignatory into arbitrating a given issue. *See, e.g., R.J. Griffin & Co. v. Beach Club Homeowners Ass'n, Inc.*, 384 F.3d 157 (4th Cir.2004); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir.1999).

However, while less common, courts have also allowed a nonsignatory to an arbitration agreement to force one of the signatories to that agreement to arbitrate claims against it pursuant to a so-called "intertwined claims" test. *See, e.g., Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528–30 (5th Cir.2000); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 841 n. 9 (7th Cir.1981). Under the intertwined claims test, "the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Thomson*, 64 F.3d at 779; *see also Choctaw Generation Ltd. P'ship v. American Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir.2001).

The rationale for preventing signatories from avoiding arbitration with nonsignatories is based on principles of equitable estoppel. This circuit has explicitly adopted the intertwined claims test as articulated by the Eleventh Circuit:

Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise

out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Brantley v. Republic Mortgage Ins. Co.,* 424 F.3d 392, 395–96 (4th Cir.2005) (quoting *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999) (citations omitted) (emphasis added)).

██ A signatory cannot base a cause of action on terms or obligations of a contract and refuse to submit to that contract's arbitration provision. *See MS Dealer Serv. Corp.,* 177 F.3d at 947 ("To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying the enactment of the Arbitration Act.") (internal citations omitted). *See also Hughes Masonry Co.,* 659 F.2d at 840–41 (finding signatory equitably estopped from repudiating arbitration clause in agreement on which suit against nonsignatory was based). This requirement is broadly construed, and does not solely apply to causes of action for breach of contract:

> To be equitably estopped from denying the applicability of an arbitration clause, therefore, the signatory need not necessarily assert a cause of action against the nonsignatory for breach of the contract containing the arbitration clause. Instead, estoppel is appropriate if "in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations

> and duties assigned to it in the agreement."

*Am. Bankers Ins. Group, Inc. v. Long,* 453 F.3d 623, 627–28 (4th Cir.2006) (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993)).

Such is unquestionably the case here. While Plaintiff does not include a breach of contract cause of action in its Complaint, at the heart of its various claims is that Broadband did not live up to its obligations under the agreement, prematurely and unfairly terminated Plaintiff as a subcontractor, was unjustly enriched as a result of these actions, and that Plaintiff took out a bond in reliance upon the agreement, which it would not have otherwise done. Plaintiff does not, and indeed cannot, provide a satisfactory explanation as to how its claims are not substantively "intertwined" with the obligations it alleges Defendants, allegedly acting as Broadband, assumed in the agreement.

██ This is further strengthened by the fact that Plaintiff initially complied with the arbitration agreement and submitted its claims to mediation on June 26, 2007, even after discovering that Broadband did not exist as a legal entity. Only after this first round of mediation failed to produce a desirable result, one week before the second scheduled mediation session was to occur, did Plaintiff decide that the contract did not exist, the arbitration agreement did not apply, and it was free to file a Complaint before this court against Defendants. The very essence of equitable estoppel is to prevent a party from taking one position when it is to that party's advantage, and taking the opposite position when it is to that party's disadvantage. If the court accepted Plaintiff's interpretation of the law, this would give every other similarly situated party two proverbial "bites at the apple." They could take the case to mediation or arbi-

tration and hope to prevail there, but if it became apparent that they would not do so, they could simply decide that the arbitration or mediation process was entirely invalid and bring their claim in a court of law instead. This would be fundamentally unfair to the other party. The fact that Plaintiff seems to have initially acknowledged the validity of the arbitration provision, and to have acknowledged Defendants' standing to be involved in mediation and arbitration under that provision, strongly speaks to both the provision's validity and the Defendants' standing to enforce the arbitration provision in the agreement.

Accordingly, the court holds that Defendants do have standing to enforce the arbitration clause and be involved in mediation and arbitration over the terms of the agreement.

The final matter for the court to determine is whether the appropriate course of action is to dismiss the Plaintiff's Complaint for lack of subject matter jurisdiction, or to stay the matter pending the outcome of arbitration.

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3 (2006). "This stay-of-litigation provision is mandatory." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir.2002). Thus, the court concludes that this matter should be stayed, rather than dismissed, pending the outcome of arbitration.

### CONCLUSION

For the foregoing reasons, it is therefore **ORDERED** that Defendants' Motion to Dismiss Plaintiff's Complaint is **DENIED**. It is further **ORDERED** that Defendants'

Motion to Stay this matter pending the outcome of arbitration be **GRANTED**.

**AND IT IS SO ORDERED.**